335 F.2d 114
 Asa D. KELLY, Jr., Individually and as Mayor of the City of Albany, et al., Appellants,
v.
M. S. PAGE et al., Appellees.
W. G. ANDERSON et al., Appellants,
v.
The CITY OF ALBANY, GEORGIA, et al., Appellees.
The CITY OF ALBANY, GEORGIA, et al., Appellants
v.
W. G. ANDERSON et al., Appellees.
 No. 20720.
 No. 20711.
 United States Court of Appeals Fifth Circuit.
 July 16, 1964.
 
 H. G. Rawls, City Atty., Albany, Ga., E. Freeman Leverett, Deputy Asst. Atty. Gen. of Georgia, Elberton, Ga., for City of Albany, Ga., et al.
 Constance Baker Motley, New York City, Donald L. Hollowell, Atlanta, Ga., C. B. King, Albany, Ga., William M. Kunstler, and Norman Amaker, New York City, for Kelly et al.
 Before BELL, Circuit Judge, and INGRAHAM, District Judge.*
 BELL, Circuit Judge.
 
 
 1
 These cases, consolidated for trial and for appeal, are the residue of the struggle in Albany, Georgia between various civil rights groups known as the Albany Movement, and the officials having charge of the government of that city.
 
 
 2
 The mayor, city manager and chief of police, by complaint filed July 20, 1962, sought to enjoin those individuals and organizations taking the lead in the Albany Movement from sponsoring, financing, inciting or encouraging unlawful picketing, parading, marching or congregating in Albany, and from doing any other act designed to provoke a breach of the peace. The denial of the prayer for injunction in that case forms the subject matter of the appeal in No. 20,720.
 
 
 3
 On July 24, 1962 the leaders of the Albany Movement filed two complaints in the District Court. Both were class actions. One sought injunctive relief against interference on the part of the city of Albany and its officials with their First Amendment rights of peaceful assembly and protest, and picketing. The city officials named as defendants[1] in that complaint filed a cross-claim which for all practical purposes is identical to their complaint in No. 20,720, supra. The District Court denied the prayers of both the plaintiffs and cross-claimants for injunctive relief, and this action of the court forms the subject matter of the appeal and cross-appeal in No. 20,711.
 
 
 4
 The other complaint filed on this date by the Albany Movement leaders sought relief from racial segregation in certain municipally-owned and municipally-regulated facilities. That complaint was dismissed after trial. On appeal this court reversed. Anderson v. City of Albany, 5 Cir., 1963, 321 F.2d 649. The District Court was directed to grant injunctive relief, and to that end the public facilities involved in that case have now been desegregated by court order. Meanwhile, certain municipal ordinances requiring segregation were repealed, and the District Court also enjoined enforced racial segregation on public buses, in the bus and train terminals, in taxicabs and theater ticket lines, and arrests for attempting to lawfully use these or the municipally-owned or controlled facilities on a non-segregated basis.
 
 
 5
 Some of the facts having to do with these cases are set out in the opinion rendered on the appeal of that case. The occurrences necessary to our consideration may be briefly stated. They took place during the period November 1961, when the Albany Movement was formed, to July 1962. The activities of the Movement included a boycott directed at city buses and merchants, picketing, and organized marches into downtown Albany on several occasions. No parade permits were issued, and the evidence is disputed as to whether or not the marchers ignored traffic lights, blocked traffic, and otherwise created congestion necessitating the blocking off of streets, the closing of stores, and the use of the entire police force to maintain order.
 
 
 6
 It is undisputed that violence attended some of these marches. The Movement leaders contend that it was among spectators and not among their groups, while the city officials contend that it was caused in any event by the acts and doings of the Movement. Whatever the source of the cause, and the District Court made no findings of fact in this regard, it is clear that this case comes to us in a background of civil disorder. Rocks and bottles were thrown at police officers, with consequent injury to at least two officers. Circumstances attendant to the demonstrations included false fire alarms, and damages to a police paddy wagon. On one occasion the mirror was shot off the paddy wagon, on another gas soaked rags were placed under the dash and ignited, and on another a concrete block was placed under it with the result that the oil pan was broken. There was also evidence that filthy and obscene epithets, not necessary to be detailed here, were frequently directed at police officers.
 
 
 7
 The last big demonstration was on July 24, 1962. There were only forty marchers but from 3,000 to 4,000 spectators participated in the ensuing confusion and disorder. Violence was avoided when the chief of police marched all available forces in a column toward the group in a successful effort to curb the disturbance that was in progress. No force was used. There was testimony that Negro spectators on both sides of the street on which the police were marching would run out in the street and spit at the officers.
 
 
 8
 During the period of these activities about 1,100 cases were made by the police, and one of the prime contentions of the civil rights leaders is that the policy of massive arrests was the stratagem used by the city to deprive them of their rights to peacefully assemble and petition for the redress of their grievances. First Amendment, United States Const., and Art. I, § I., par. XXIV, Ga.Const. To this must be added the fact that there was substantial evidence of interference by the police with small-scale picketing, which, from aught that appears, was being peacefully conducted.
 
 
 9
 The city points to evidence that the leaders of the Movement stated they would not obey the city ordinances relating to parade permits, blocking the streets, and refusing to move on and that Dr. Anderson once threatened to bring 1,000 marchers to the city hall if the city refused to release certain prisoners. Dr. Martin Luther King, Jr. called for a day of penance after the march on the night of July 24, 1962 and the difficulty subsided. The city points to this as evidence that the leaders were in control of the spectator participants as well as the marchers.
 
 
 10
 By way of factual summation, and in the absence of specific findings by the District Court, it may be said that those engaged in the Albany Movement were seeking to exercise their constitutional rights while the city officials were seeking to carry out their duty to the public, under the concept of ordered liberty, of maintaining law and order. Whether either side overstepped the bounds of law is the question. The answer to this question will in large measure determine whether the District Court committed error as charged.
 
 
 11
 As this court noted in Anderson v. City of Albany, supra, such a determination should first be made by the District Court. That has not been the case since the District Court was satisfied to deny injunctive relief on the basis of changed conditions, i. e., that the trouble giving rise to the complaint had ended. Our view is that this method of determination, at least for the purposes of review, fell short of the mark. We affirm in case No. 20,720,[2] but vacate and remand in No. 20,711 for full findings of fact and conclusions of law. In so doing, we deem it good judicial administration to point to certain changed conditions and applicable aspects of the law that will be pertinent to reconsideration by the District Court on remand.
 
 
 12
 There are no jurisdictional problems in No. 20,711. The complaint rested on 28 U.S.C.A. § 1343(3) and 42 U.S.C.A. § 1983. The cross-claim arose out of the same transaction or occurrence, and no separate jurisdictional base is necessary. Rule 13(g), F.R.Civ.P. See Childress v. Cook, 5 Cir., 1957, 245 F.2d 798; 3 Moore's Fed.Prac., ¶ 13.36; and 1 A Barron & Holtzoff (Wright Ed.), § 392.
 
 
 13
 The findings and conclusions to be made on remand may be made on the present record or as supplemented by additional evidence. Cf. United States v. DeVane, 5 Cir., 1962, 306 F.2d 182. In either event, they must be adjusted to the change in facts. In this connection, it is apparent that a good bit of the trouble between the Albany Movement and the city officials was accounted for by the city ordinances requiring segregation, and by the practice of segregation in public facilities such as libraries and parks. That bone of contention, as stated above, has now been resolved. Another problem was the Albany parade ordinance. The city contends that the leaders refused to obey the ordinances while the leaders contend that all requests under it were uniformly denied by the city manager in whose sole discretion the granting of permits rested, and that the ordinance itself was lacking in constitutional standards in that it did not contain a definition of a parade. See Hague v. C. I. O., 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. The constitutionality of this ordinance was not put in issue in the District Court, and thus remains for consideration. Another change in the factual background is that a beginning is being made in the desegregation of the public schools of Albany and Dougherty County. See Gaines v. Dougherty County Board of Education, 5 Cir., 1964, 329 F.2d 823. Moreover, the supervening fact of passage of the Civil Rights Act of 1964 must also be considered insofar as it may be applicable to the pending controversy.
 
 
 14
 The factual situation must then be considered in the light of the rights accruing under the Constitution and our system of Federalism to plaintiffs, and the duties imposed on the city officials. We will attempt to list the respective rights and duties of each as they exist under the circumstances of this case. And the mere listing will demonstrate that there is room in our system of government for both, once the proper balance between them is drawn. The rights of plaintiffs must be accorded by the city, but they may be accorded in a context necessary to public order. Both sides must remember that there are no absolutes.
 
 
 15
 First as to the rights of plaintiffs, those espousing civil rights through the Movement, it has long been settled, indeed from the beginning, that a citizen or group of citizens may assemble and petition for redress of their grievances. First Amendment, U.S.Const., supra, Art. I, Ga.Const., supra; and Edwards v. South Carolina, 1963, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697. A march to the city hall in an orderly fashion, and a prayer session within the confines of what plaintiffs seek would appear, without more, to be embraced in this right.[3]
 
 
 16
 Peaceful picketing for the object of eliminating racial discrimination in department stores open to the general public is a right embraced in free speech under the First Amendment to the Constitution, and made applicable to the states by the Fourteenth Amendment. Thornhill v. Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 and Edwards v. South Carolina, 1963, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697. And these rights to picket and to march and to assemble are not to be abridged by arrest or other interference so long as asserted within the limits of not unreasonably interfering with the right of others to use the sidewalks and streets, to have access to store entrances, and where conducted in such manner as not to deprive the public of police and fire protection. Cf. American Steel Foundries v. Tri-City Central Trades Council, 1921, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, on drawing the "constitutional boundary line between the competing interests of society involved in the use of picketing * * *." Hughes v. Superior Court of California, 1950, 339 U.S. 460, 70 S.Ct. 718, 94 L. Ed. 985. Of course, it should be added, that those claiming these rights are entitled to police protection throughout the course thereof. Hague v. C. I. O., supra.
 
 
 17
 Adherence to these principles will afford a balance between the rights of these citizens and the general public, and permit the city officials to continue in control of the city affairs from the standpoint of maintaining law and order, providing police and fire protection, and insuring tranquillity for all citizens. These functions, reserved to local government under the federal-state constitutional and governmental pattern, see Cantwell v. Connecticut, 1940, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213; Kovacs v. Cooper, 1949, 336 U.S. 77, 69 S. Ct. 448, 93 L.Ed. 513; and Feiner v. New York, 1951, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 267, may be exercised in a degree sufficient for their purposes, but are not to be used as a medium to thwart or intrude upon First Amendment rights otherwise being validly asserted.
 
 
 18
 In short, those engaged in the Albany Movement have definite well defined constitutional rights. They must be accorded where claimed, but in a manner that will accommodate rights of other citizens to the end that the rights of all may be preserved. Plaintiffs, by the terms of their prayer, recognize these limitations on their rights. The city officials likewise, by moving against only unlawful picketing, marching and congregating recognize the rights of plaintiffs. The problem for the District Court is to promptly find the facts and draw the balance.
 
 
 19
 The judgment in No. 20,720 is affirmed; the judgment in No. 20,711 is vacated and remanded for further proceedings not inconsistent herewith. The Clerk is directed to issue the mandate forthwith.
 
 
 
 Notes:
 
 
 *
 Judge Cameron, the third judge constituting the Court originally hearing this case, died after argument but before decision. Consequently, this decision and opinion is rendered by a quorum pursuant to Title 28 U.S.C.A. § 46(c) and (d)
 
 
 [1]
 The defendants included, in addition to the mayor, city manager and chief of police named in No. 20,720, the City of Albany, a body corporate, the mayor pro tempore and five city commissioners
 
 
 [2]
 The District Court was of the opinion that it was not necessary to consider the asserted defense that the court was without jurisdiction to grant the relief sought in No. 20,720. Chief Judge Tuttle, on a motion for stay after appeal, dissolved the temporary restraining order theretofore entered by the District Court on the basis that the acts complained of were not encompassed in the civil rights statutes, citing Collins v. Hardyman, 1951, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253. The city officials had relied on 28 U.S.C.A. §§ 1331 and 1343, and 42 U.S.C.A. § 1985 (3) for jurisdiction. They then amended their complaint to spell out alleged deprivation of equal protection rights of the public in Albany due to the necessity of using all police officers to control the demonstrations, and because it was necessary to close stores, and because streets were blocked. They also amended to allege that more than ten thousand dollars was involved in the controversy. They cite Brewer v. Hoxie School District, 8 Cir., 1956, 238 F.2d 91 as supporting jurisdiction but that case involved defendants interfering with federal rights. Assuming proper jurisdiction, it is doubtful in view of this court's ruling in Congress of Racial Equality v. Clemmons, 5 Cir., 1963, 323 F.2d 54 whether the complaint states a cause of action. However, instead of reaching either question, it is enough to simply affirm the ruling of the District Court which in effect was that all relief be denied because the same issues were pending in No. 20,711
 
 
 [3]
 The plaintiffs in No. 20,711 asked that the city officials be enjoined from:
 "a. Continuing to pursue a policy of denying to Negro citizens the right to peacefully protest against state enforced racial segregation in the City of Albany, Georgia, by peacefully walking, two abreast, upon the public sidewalks of the City of Albany, observing all traffic signs and regulations, to the City Hall in the City of Albany, Georgia, and peacefully assembling in front of the City Hall, and peacefully speaking out against such segregation during a period of not more than two hours during the day, when traffic to and from places of business and employment is not at its peak;
 "b. Continuing to deny to Negro citizens a permit, or other appropriate approval, to peacefully demonstrate against state enforced racial segregation in the City of Albany by peacefully parading through the streets of Albany, Georgia, in accordance with proper police regulations as to traffic and time;
 "c. Continuing to deny to Negro citizens the right to peacefully picket against state enforced racial segregation in publicly owned and operated or publicly owned and leased, public recreational, library and other owned public facilities in the City of Albany, Georgia, by peacefully walking upon the sidewalks or near the premises of such facilities carrying appropriately worded signs protesting against racial segregation in such public facilities;
 "d. Continuing to deny to Negro citizens the right to peacefully protest against racial segregation in privately owned and operated transportation facilities such as, buses, bus depot, and train stations facilities and services, taxicabs, theaters, drug stores, department stores and other facilities open to the general public for trade and commerce; * * *".