Father Nathaniel MACHESKY, Reverend M. J. Black and Reverend William Wallace, Individually and on behalf of those similarly situated, Plaintiffs,

v.

Honorable William H. BIZZELL, as Chancellor of the Chancery Court of Leflore County, Mississippi, A. B. Abide, d/b/a Abide's Downtown and Abide's Highland Park, and Barrett's Drug Store, Inc., a Mississippi Corporation, Defendants.

No. GC 6821.

United States District Court
N. D. Mississippi,
Greenville Division.

Aug. 13, 1968.

Elliott C. Lichtman, Jackson, Miss., for plaintiffs.

Lott, Sanders & Gwin, Greenwood, Miss., William H. Bizzell, Chancellor, Cleveland, Miss., for defendants.

## OPINION OF THE COURT

KEADY, Chief Judge.

Plaintiffs filed their complaint in this court seeking declaratory and injunctive relief against William H. Bizzell, Judge of the Chancery Court of Leflore County, Mississippi, and A. G. Abide and Barrett's Drug Store, Inc., as representatives of certain Greenwood merchants, to have declared lawful and protected by First and Fourteenth Amendments to the United States Constitution and by the Civil Rights Acts of 1964 and 1968, certain picketing and other organized conduct and activities engaged in by plaintiffs at Greenwood, Mississippi, to "publicize their grievances against the merchants and the administration of the City of Greenwood and Leflore County, and to urge compliance with an economic boycott" against certain Greenwood merchants because of alleged denial of equal rights to Negro citizens in the community. The complaint also sought "to restrain the issuance of any injunction by the Chancery Court of Leflore County, Mississippi, at the instance of defendants which infringes on these federal rights."

Federal jurisdiction was asserted under 28 U.S.C. §§ 1343 and 2201. The federal court complaint was filed on June 11, 1968. No motions were thereafter filed by plaintiffs until July 26, 1968, when they presented a motion denominated "To Expedite Declaratory Judgment and to Vacate or Modify Chancery Court Injunction".

The case is now before the court on motions filed by the defendant William H. Bizzell to dismiss upon the ground that the complaint fails to state a claim as to him upon which relief can be granted, and by the defendant merchants asserting also a like ground for dismissal, and an added ground that, at the time of the commencement of the federal court action, there was already pending in the state court a proceeding involving the same parties and same issues. It will be helpful to recite the chronology of this litigation as it appears from motions and supporting affidavits before the court and also from statements of fact made by plaintiffs' counsel in their brief filed in opposition to the two motions to dismiss.

On June 5, 1968, defendant merchants and others of their class instituted suit in the Chancery Court of Leflore County, Mississippi, Cause No. 15725, seeking to enjoin plaintiffs and other members of their class, collectively described as "Greenwood Movement" from continuing an allegedly illegal conspiracy engaged in by plaintiffs, beginning on or before April 11, 1968, to destroy the business of the Greenwood merchants by boycotting their stores and withholding their trade, and also by mass picketing of such places of business. The state court suit further charged that plaintiffs (as defendants there) "by force, violence, coercion, threats, abusive language, intimidation, and unlawful means, prevented a great portion of Greenwood citizens, mostly Negroes, from doing business" with defendant merchants, and plaintiffs "by their unlawful acts and malicious conduct, had created an atmosphere of fear in the Greenwood Negro community, and, to a degree, in Greenwood's white community, that prevents a substantial portion of Greenwood citizens from exercising their own will in determining whether or not they will do business" with the defendant merchants. Many specific incidents in support of these allegations were detailed in the bill of complaint. Defendant merchants further charged that because of the atmosphere of fear and terror existing in the Negro community of Greenwood, a continuation of the boycott and picketing "on any basis or under any controls" would be unavailing to restore free will on the part of citizens because of "the background of violence" in which the boycotting and picketing has been set and that "the momentum of fear generated by this past violence on the part of defendants will survive and persevere as long as the boycott or picketing occurs in any form or manner whatsoever." The state court suit prayed for the Chancellor to set a time and place for a hearing on an application for temporary injunction designed to prohibit plaintiffs from picketing or marching or loitering or congregating upon any sidewalk or street, or stationing lookouts for the purpose of observing customers entering, leaving or shopping or doing business in the Greenwood business establishments, or engaging in other related proscribed activities.

On June 5, 1968, which was the date of the filing of the state court suit, the Chancellor set a hearing for June 12, 1968, on the application for temporary injunction, and plaintiffs were at once served with both Chancery summons and citation for special hearing. On June 12, 1968, plaintiffs moved defendant Chancellor to postpone the hearing because of their filing of the federal court action on the previous day, June 11, 1968. That motion was overruled. On June 12, 13 and 17, the state court heard evidence in support of the merchants' application for temporary injunction. On June 19, 1968, the state court overruled plaintiffs' motion to dismiss the bill, and received evidence offered by plaintiffs. The evidentiary hearing was concluded on June 19, 1968. At this conclusion, the Chancellor requested briefs from both sides, which were received by him on June 25, 1968. Plaintiffs had made timely request for finding of facts and conclusions of law by the state court, pursuant to Mississippi Code Annotated § 1390.

On July 4, 1968, the Chancellor issued his written opinion making extensive findings of fact and stating conclusions of law. On July 5, 1968, a temporary injunction, in accordance with the Chancellor's opinion, was issued against plaintiffs prohibiting them from picketing or marching in a specified restricted area of the business section of Greenwood, or from loitering or congregating upon any public sidewalk or street in Greenwood (by amendment made applicable only to the restricted business area), for the purpose of doing anything to induce, persuade or coerce any person not to trade with specified business establishments, or from stationing themselves or anyone else as lookouts to observe customers entering, leaving, or shopping or doing business in such busi-

ness establishments, or from making or preparing a record of the names, automobile license numbers and other identification of persons entering or trading in such business establishments, or from publishing, distributing or announcing in any manner the name of persons who have entered or traded in, or may enter or trade in, such business establishments, or from causing such names to be published or otherwise distributed, and finally against plaintiffs threatening, intimidating, coercing or using force or violence upon any person to dissuade him from entering or trading in such business establishments. On July 11, 1968, plaintiffs filed a motion urging the state court to modify or clarify its order of temporary injunction, and on July 20, 1968, the Chancellor issued a second opinion making a slight modification in the terms of the temporary injunction but otherwise overruling plaintiffs' objections thereto.

Also, at the July 1968 Rules Day of Leflore County Chancery Court, plaintiffs filed a demurrer and answer to the bill of complaint which also sought a permanent injunction.

■■■ Thus, it will be seen that after the mere filing of a complaint in federal court, plaintiffs participated in extensive hearings in the pending state court action and joined battle on the factual issues by offering evidence to refute the merchants' charges of threats, intimidation, actual violence and community-wide coercion and resulting fear produced by the Greenwood Movement. It is evident that there were serious, genuine issues of fact relating to whether or not the activities of the Greenwood Movement had exceeded the limits of freedom of speech, assembly, and petition guaranteed to plaintiffs by the Federal Consti-

tution. Be that as it may, no application was made by plaintiffs to this court, upon motion and notice as provided by Rule 65(a), F.R.Civ.P., for a preliminary injunction against the prosecution of the state court action, nor for a temporary restraining order, grantable under Rule 65(b), with or without notice upon a showing of immediate and irreparable injury. No reason has been suggested why plaintiffs should be relieved of the duty of timely staying the hand of the state court if they, in fact, had justifiable basis for believing that their federally protected rights would not be recognized and honored by the state court. In these circumstances, it seems hardly enough for plaintiffs, who were represented by able counsel, to have merely requested a postponement from the Chancery Judge who had not, as of that date, been served with federal court summons, and to do nothing else.[1] Avoidance of needless conflict between orders of the state and federal courts is a matter which is not to be ignored by responsible litigants in the protection and maintenance of their legal positions.

■■■ Nor is any suggestion presently made that the Chancellor exhibited an arbitrariness, partiality or prejudgment, or that other special circumstance was present, so as to infect the state court proceedings with infirmities offensive to notions of fair trial and due process. On the contrary, the detailed opinion of the Chancellor enables us to say that he gave mature consideration to the contentions advanced by plaintiffs that they were only exercising rights protected by First and Fourteenth Amendments in picketing, marching, boycotting, and otherwise publicizing their grievances because of racial discrimination against both the Greenwood merchants and the

---

1. Plaintiff's failure to attempt to remove the state action is without legal significance here because of its lack of removability under 28 U.S.C.A. § 1443. City of Birmingham v. Croskey (N.D. Ala.), 217 F.Supp. 947 (1963); State of Alabama ex rel. Flowers v. Robinson (N. D.Ala.), 220 F.Supp. 293 (1963); Levitt & Sons, Inc. v. Prince George County Congress of Racial Equality (D.C.Md.), 221 F.Supp. 541. cf. Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); Davis and Hazzard v. State of Alabama, 5 Cir. 1968, 399 F. 2d 527.

City and County governing authorities. The real objection now urged by plaintiffs is that the state court injunction is excessively and unconstitutionally broad since it completely prohibits all aspects of picketing, marching, demonstrating, handbilling and other related overt conduct in support of plaintiffs' protest and boycott. Suffice it to say that, if the Chancellor has erred in the granting of an injunction of that scope—a point on which we presently express no opinion —plaintiffs have an effectual remedy under state law to obtain a speedy vindication of their constitutional rights which state courts, no less than federal courts, are bound to protect. By Miss. Code Ann. § 1348, a motion to dissolve the state court injunction, upon bill and answer, can be heard by the Chancellor in vacation, on five days' notice to the adverse parties; and by Code § 1289 an early ruling on plaintiffs' demurrer filed in the state court action can be sought. From the orders of the Chancery Judge in respect of these matters, an interlocutory appeal may be taken to the Supreme Court, if allowed by the Chancellor, and if refused by him, the appeal may nevertheless be granted by a Judge of the State Supreme Court. Miss.Code Ann. § 1148 and § 1957. Moreover, a Judge of the Mississippi Supreme Court may grant supersedeas where it has been refused by the Chancellor. Yazoo & M. V. R. Co. v. James, 108 Miss. 656, 659, 67 So. 152 (1915). Controlling federal decisions on the rights of persons to picket, march, boycott and protest, to the extent that they are now urged by plaintiffs, would be open for consideration by the State Supreme Court, and its

judges, upon the record made in state court. If the Chancellor has committed error, corrective action lies by way of appeal to the State Supreme Court and by review in the United States Supreme Court. See Southern Bus Lines, Inc. v. Amalgamated Ass'n, etc., 205 Miss. 354, 38 So.2d 765 (1949), which involved an analogous application of the guiding principles enunciated by the United States Supreme Court in Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed.2d 836 (1941), upholding a prohibition upon future picketing in any form where it has sprung from violence and lawlessness.[2] Whether or not all aspects of the Chancery Court injunction are justified by evidentiary support in the record involves an exercise of appellate jurisdiction over that court which is neither required by law nor deemed appropriate for a separate state and federal court system of concurrent jurisdiction.

The principles of comity and abstention by a federal court with respect to a *pending proceeding* in state court have been given statutory recognition by 28 U.S.C.A. § 2283, commonly referred to as the Federal Anti-Injunction Statute. § 2283 provides as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

We need concern ourselves only with the first mentioned exception—that of an express authorization by an Act of

2. The state court fully considered, and deliberately rejected, an injunction limited only to acts of coercion, threats, and violence. We quote from Opinion of Chancellor, p. 10, as filed by both sides in our jacket file: "The acts of violence connected with the boycott, together with the coercive nature of the picketing and the communicated threats, cannot but leave in the Negro community a considerable fear and reluctance to go into the business area.

"I have given consideration to an order prohibiting only the acts of coercion, threats, and violence. However, it is my considered opinion that this would not be enough to remove the fear which a large portion of the Negro residents of Greenwood must certainly have in crossing the picket line of Defendants, based upon the experience of the last three months."

Congress—since the other two are clearly inapplicable to the case sub judice. Plaintiffs urge that such express congressional authorization as would permit intervention here exists in 42 U.S.C.A. § 1983,[3] and 28 U.S.C.A. § 1343,[4] which create a right of action and confer original jurisdiction upon the federal district courts of causes to redress state deprivation of federally-protected constitutional rights. That § 1983 constitutes an express exception to the Anti-Injunction Statute has, in fact, been specifically held by some courts. Cooper v. Hutchinson, 3 Cir., 184 F.2d 119; Tribune Review Publishing Company v. Thomas, W.D.Pa., 153 F.Supp. 486; see also 1 A Moore's Federal Practice ¶ 0.213[2] p. 2417. This construction has, on the other hand, been specifically rejected elsewhere. Smith v. Village of Lansing, 7 Cir., 241 F.2d 856; Baines v. City of Danville, 4 Cir., 337 F.2d 579; Sexton v. Barry, 6 Cir., 233 F.2d 220; Cameron v. Johnson (S.D.Miss.1966), 262 F.Supp. 873, a three-judge court.

On direct appeal from *Cameron*, the Supreme Court of the United States, while affirming the result reached below, found it "unnecessary to resolve" this vital question.[5] Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182, decided April 22, 1968.

Neither has the Fifth Circuit Court of Appeals ever directly faced and decided the issue. Thus, it remains that as for the lower federal courts which had addressed themselves to the precise question, "On one side or the other, there may have been a flash of genius, but their unelucidated conflict leaves us with no basis for reliance upon any of them." Baines v. City of Danville, supra.

Without the benefit of an authoritative pronouncement of the applicable rule in the Fifth Circuit, we must be guided by the basic considerations of equity and comity which underlie the Anti-Injunction Statute, upon which the Supreme Court has, in fact, spoken in many cases referred to by the Fourth Circuit in *Baines*, supra (337 F.2d p. 591, FN 10). The *Baines* opinion appears to be the best reasoned holding in this area of statutory interpretation, and we rely thereon. We regard it as significant that the recognized statutory exceptions to § 2283, as illustrated by the Removal Acts, are peculiarly incompatible with the Anti-Injunction Statute. As stated in Baines v. City of Danville, supra, by the enactment of such statutes, Congress may fairly be said to have intended to create an exception, since removability of causes would be of little value without the concomitant pow-

---

3. A right of action is granted by § 1983, which reads as follows:

   "Civil action for deprivation of rights.

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4. Original jurisdiction to hear a civil action is granted by § 1343 which provides, in relevant part:

   "Civil rights and elective franchise.

   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   * * * * *

   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; * * *."

5. In Footnote 3 of the Cameron case, the court stated in part as follows:

   "The District Court held that § 2283 prohibited the Court from enjoining or abating the criminal prosecutions initiated against the appellants prior to the filing of the suit on April 13, 1964, and further, that 42 U.S.C. § 1983 creates no exception to § 2283. 262 F.Supp. 873, 878. We find it unnecessary to resolve either question and intimate no view whatever upon the correctness of the holding of the District Court."

er of the federal courts to stay the pending state proceedings. § 1983, on the other hand, represents a grant of general equity jurisdiction, which, without more, cannot be said to supplant, even implicitly, the venerable principles of judicial abstention and comity embodied in § 2283. We think that the relationship between § 1983 and the Anti-Injunction has been accurately described in the well-considered *Baines* decision at page 589:

> "In strong contrast [to the Removal Acts] is the Civil Rights Act. It creates a federal cause of action, but with no suggestion, explicit or implicit, that appropriate relief shall include an injunction which another Act of Congress forbids. The substantive right, in many situations, may call for equitable relief, and equitable remedies are authorized, [cases cited] but only by a general, jurisdictional grant. Creation of a general equity jurisdiction is in no sense antipathetic to statutory or judicially recognized limitations upon its exercise. * * * If every grant of general equity jurisdiction created an exception to the anti-injunction statute, the statute would be meaningless."

■ Section 2283 is not a jurisdictional statute, but is rather a limitation upon the exercise by a district court of its injunctive powers, and courts have interpreted certain statutes to be exceptions wherein a federal judge might enjoin state court proceedings without offending the principles of comity.[6] We have been admonished, however, by the United States Supreme Court, in Amalgamated Clothing Workers of America v. Richman Brothers Co., 348 U.S. 511, 514, 75 S.Ct. 452, 99 L.Ed. 600, which has emphasized that "Congress made clear beyond cavil that the prohibition

[§ 2283] is not to be whittled away by judicial improvisation."

■ Thus, we are constrained to hold that to recognize § 1983 as an exception to the Anti-Injunction Statute would be incorrect statutory interpretation as well as an unwarranted disregard of the judicially-fashioned principles of comity and abstention, as codified in § 2283.

■ Despite the foregoing conclusion, we nevertheless recognize that the principle of comity, and hence § 2283, may yield to the extraordinary case wherein federal injunctive relief, despite the pendency of a state action, is the only means in a situation involving a patent infringement of constitutional rights for the avoidance of grave, irreparable injury. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Smith v. Apple, 264 U.S. 274, 44 S.Ct. 311, 68 L.Ed. 678; Baines v. City of Danville, supra; T. Smith and Son v. Williams, 5 Cir., 275 F.2d 397. This is not that rare case, however, for the utilization of a federal injunction to vindicate a clear constitutional right.

Exemplifying such exceptional situation is Florence v. Myers, 9 Race Relations Law Reporter 144 (M.D.Fla.1964), which is strongly relied upon by plaintiffs here. In that case, a juvenile court judge had issued an injunction restraining all persons under 17 years of age from picketing or demonstrating in front of or near local business establishments without first obtaining an order from his court. The federal district judge enjoined the enforcement of that order, holding, with correctness, that the juvenile court judge had "passed a law" against picketing which constituted an *impermissible prior restraint* upon First Amendment freedoms. Similarly, Aelony v. Pace, (N.D.Ga.1963), 8 Race Relations Law Reporter 1355, involved a

---

6. The excellent history of the statute afforded us by the opinion in Baines v. City of Danville, supra, recounts that illustrative statutes construed to be exceptions to § 2283 were the Removal Acts, the Frazier-Lemke Act, The Emergency Price Control Act of 1942, and the Federal Bankruptcy Act.

federal court injunction issuing against prosecuting of plaintiffs under Georgia's "insurrection" and "unlawful assembly" statutes previously declared unconstitutional by the Supreme Court of the United States, and is quite inapposite here. Also, the persistent efforts of Georgia officials to enforce this invalid statutory scheme of oppression was federally enjoined in Carmichael v. Allen, (N.D.Ga.1967), 267 F.Supp. 985. Lastly, Johnson v. Davis, (M.D.Fla.1964), 9 Race Relations Reporter 814, is an example of proper federal court action to restrain the fixing of excessive bail in an arbitrary and capricious manner utterly devoid of fair hearing and consideration of uncontradicted facts, in violation of the Eighth Amendment. None of these cases which are cited by plaintiffs is at all applicable to justify a federal injunction under the radically different circumstances here presented.

■ We turn now to plaintiffs' contention that it is incumbent upon this court to grant a declaratory judgment, notwithstanding our conclusion as to the impropriety of its issuance of an injunction.

The authority of federal courts to issue declaratory judgments and the scope of such relief are set out in 28 U.S.C. § 2201, which provides as follows:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

In asserting that a declaration of their rights to picket and conduct a boycott is required to be issued by this court, plaintiffs place principal reliance upon recent decisions of the United States Supreme Court in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967), and Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Those decisions hold, in the context of judicial consideration of a judgment to declare unconstitutional a statute, that "the abstention doctrine is inappropriate for cases * * where * * * statutes are justifiably attacked *on their face* as abridging free expression * * *." (Emphasis added). *Dombrowski*, 380 U.S. at 489–490, 85 S.Ct. at. 1122, 14 L.Ed.2d at 30; *Zwickler*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 454; see also Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1966), Note 9 (1966), and Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), for similar language. We hold that those decisions are not controlling in the case at bar, and, therefore, that plaintiffs' motion to expedite declaratory judgment as well as for vacation or modification of the Chancery Court injunction must be denied.

*Dombrowski*, supra, the leading case in this area, involved an attempt by a Louisiana organization fostering civil rights for Negroes to obtain declaratory relief and an injunction restraining defendant Louisiana officials from prosecuting or threatening to prosecute appellants for alleged violations of the Louisiana Subversive Activities and Communist Control and the Communist Propoganda Control Law [La.Rev.Stat. §§ 14:358 through 14:374 (Cum.Supp. 1962), and La.Rev.Stat. §§ 14:390 through 14:390.8 (Cum.Supp.1962), respectively]. A three-judge district court dismissed the complaint, holding that consideration of the federal issues should be postponed until review of state prosecutions, 227 F.Supp. 556. It was in the context of an obviously unconstitutionally vague statute that the United States Supreme Court held abstention improper.

Upon its consideration of the *Zwickler* decision, the Supreme Court, in declaring the abstention of the district court to be inappropriate for a declaratory judgment action, was again concerned with the constitutionality of a particular state statute [McKinney's N.Y.Laws, Penal Law § 781–b (now superseded in identical language by McKinney's N.Y. Laws, Educational Law § 457, see L. 1965, c. 1031, at 1782–1783)]. That statute made it a crime to distribute handbills for another containing statements concerning a candidate for public office, without printing ·thereon the names and address of the printer and of the person causing the handbill to be distributed. Appellant, whose previous conviction under the law had been reversed on state grounds by the New York Supreme Court, Appellate Term, sought in the United States Supreme Court a declaration that the statute was repugnant to the guaranties of free expression secured by the Federal Constitution.

Thus, in neither *Dombrowski* nor *Zwickler* was there a situation similar to that now presented. The controversy·in those cases was the propriety of abstention by a federal court in cases where state statutes were contended to be void *on their face*. In *Zwickler*, the court stated the task before it to be the determination of "the scope of the discretion of the district courts to abstain from deciding the merits of a challenge that a *state statute on its face* violates the Federal Constitution." (Emphasis added).

We hold that the particular circumstances of the case sub judice renders it one not governed by the latest pronouncements by the Supreme Court with regard to the abstention doctrine. We reach this decision not only because the court did not extend its holdings beyond those rendered on the particular circumstances before it, i. e., a statute attacked as unconstitutional on its face, but also because there is sound logic in a federal court's abstention in cases such as that at bar. In order to declare the rights of the plaintiffs here, it would be necessary that we go much further than simply to examine the provisions and probable effect of a statutory provision in the light of current constitutional standards. Our task would be to determine from the trial record made in the Chancery Court proceeding whether Chancellor Bizzell abused his discretion in framing the terms of his injunction. We decline, therefore, to reexamine the decision of the Chancellor, made in his discretion, with all available evidence before him. We deem the scope of inquiry required in order to determine the correctness in ·terms of discretion of a state court of equity far beyond that envisaged by the Supreme Court in *Zwickler* and *Dombrowski*. To invest the declaratory judgment procedure with that kind of a mandate would, at one stroke, subvert the judicial significance and integrity of state courts and their orderly proceedings.

In reaching the foregoing conclusions we have assumed arguendo that the Chancery action in state court and the order of injunction granted in that court constitute "state action" as related to deprivation of rights contemplated by § 1343 and § 1983, so as to render pertinent a discussion of those two statutes. Since we have reached a decision in this case on other grounds hereinabove set forth, it is not deemed necessary to examine, at this time, the correctness of this underlying assumption.

### ORDER

ORDERED

That the complaint be, and the same is hereby dismissed without prejudice, in the exercise of the discretion of this court to withhold both injunctive and declaratory relief prayed for.

All costs are taxed to plaintiffs.