Father Nathaniel MACHESKY et al.,
Plaintiffs-Appellants,

v.

Honorable William H. BIZZELL, as Chancellor of the Chancery Court of Leflore County, Mississippi, et al., Defendants-Appellees.

No. 26832.

United States Court of Appeals
Fifth Circuit.

June 5, 1969.

Rehearing Denied and Rehearing En Banc Denied July 18, 1969.

284

Elliott C. Lichtman, L. A. Aschenbrenner, Lawrence D. Ross, Jackson, Miss., Jonathan Shapiro, New York City, for appellants.

Stanny Sanders, Arnold F. Gwin, Hardy Lott, Greenwood, Miss., William H. Bizzell, Chancellor of Leflore County Chancery Court, Greenwood, Miss., for appellees.

Before BELL and THORNBERRY, Circuit Judges, and CHOATE, District Judge.

BELL, Circuit Judge.

This appeal involves First Amendment rights. Suit was filed in the state court to enjoin the picketing and boycotting activities of appellants. They, in turn, sought declaratory and injunctive relief in the federal court. The federal district court denied relief and dismissed the complaint. The district court's reasoning was based on the facts that the same controversy had first been submitted to the state court, and that the state court had assumed jurisdiction, held an evidentiary hearing and enjoined appellants. These facts led the court to the view that its injunctive prerogative was inhibited by Title 28 U.S.C.A. § 2283,[1] in that this was "* * * not the rare case * * * for utilization of a federal injunction to vindicate a clear constitutional right." The court was of the further view that declaratory relief was not required by the holding of Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444. This appeal followed. We reverse for further proceedings for the reasons to be set out and within stated limits.

Appellants are members of the "Greenwood Movement", a civil rights group active in Greenwood, Mississippi. Two of the appellees are class representatives of some sixty merchants and bankers in Greenwood who appeared as plaintiffs in the state court suit, some appearing in an individual capacity, some in a corporate capacity. The third appellee is Honorable William H. Bizzel, Chancellor of the Chancery Court of Leflore County, Mississippi, who issued the injunction in the state court suit.

There was no evidentiary hearing in the federal district court and the following facts are taken from the pleadings in the federal and state courts and from the opinions rendered in each court. There was an extensive state court evidentiary hearing but the record of that

1. 28 U.S.C.A. § 2283:
    "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

hearing was not before the district court. The decision of the district court was rendered on a motion to dismiss.

The state court suit was filed on June 5, 1968. The federal suit was filed on June 11. The state court heard evidence on June 12, 13, 17, and 19. The state court injunction issued on July 4. Appellants moved on July 26 for expedition of the federal suit.

The Greenwood Movement was organized in November of 1967. Its activities greatly increased after the murder of Dr. Martin Luther King, Jr. in April of 1968. A boycott of white merchants began on April 10, 1968. The Movement stated its objectives to be, *inter alia*, "To eliminate segregation and discrimination; to make all men free; to create fair employment practices." The state court found the specific goals to be equal employment by the city, equal job opportunities in business, use of courtesy titles, improved city services in Negro areas, fair treatment by police, representation on various public boards and agencies, and dialogue with elected officials. The picketing which supported the boycott was very intensive, being carried on every day except Sunday. The state court found that "* * * In a few instances the size of groups has been sufficient to interfere with vehicles and pedestrians, but this has not been a major problem."

The state court found that the Movement did, however, involve activities of a more questionable nature. There was testimony to indicate that members of the Movement had harassed and used abusive language toward Negroes who continued to patronize the white merchants. There were instances of violence. The most serious was a firebomb thrown into the house of a Negro family who had continued to shop at stores of the white merchants. There were several instances of windows having been broken, in one case by a bottle containing a note saying, "Don't shop downtown or fire next time—The Spirit."

The state court order enjoined:

"1. Picketing or marching, or persuading or inducing any other person or persons to picket or march, in any organized form whatsoever, with or without signs or placards, upon Howard Street or upon Carrollton Avenue or in the Highland Park Shopping Center in the City of Greenwood, or within 300 feet of the place of business in the City of Greenwood of any of the Complainants in this cause, a list of which complainants is attached hereto and is made a part hereof.

"2. Loitering or congregating, or inducing or persuading any person or persons to loiter or congregate, upon any sidewalk or street or other public area in the City of Greenwood for the purpose of doing anything whatsoever, directly or indirectly, to induce, persuade, or coerce any person or persons not to trade or do other business with the business establishments of any of the said Complainants in the City of Greenwood, Mississippi.

"3. Stationing themselves or anyone else as a lookout or lookouts for the purpose of observing customers entering, leaving, or shopping or doing other business in the business establishments of any of the said Complainants in the City of Greenwood, Mississippi.

"4. Making or preparing or causing to be made or prepared a record of the names, automobile license numbers or other identification of person or persons entering or trading in the business establishments of any of the said Complainants in the City of Greenwood, Mississippi.

"5. Publishing, distributing, or announcing in any manner the name or names of persons who have entered or traded in or shall hereafter enter or trade in the business establishments of any of said Complainants in the said City of Greenwood or causing such names to be published, distributed or announced; and

"6. Threatening, intimidating, coercing, or using force or violence upon any person or persons so as to

dissuade such person or persons from entering or trading in the business establishments of any of said Complainants in the said City of Greenwood."[2]

The prayer of appellants in the federal court was for a declaration of their federal rights and an order vacating the state court injunction, or in the alternative, that the bounds of the state court injunction be limited. On August 13, 1968, the district court dismissed the complaint. Machesky v. Bizzell, N.D. Miss., 1968, 288 F.Supp. 295.

## I.

The several issues presented in the district court included whether state action was present so as to render the Fourteenth Amendment applicable. The court, acting on an assumption *arguendo* basis, found it unnecessary to reach this question and it must be considered on remand. Cf. Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161. In considering this question the district court must analogize the state court order with cases where First Amendment rights [picketing] have been restricted by municipal ordinances. Cf. Davis v. Francois, 5 Cir., 1968, 395 F.2d 730.

■ Another issue in the district court, and one which is asserted here by appellants, is that they were entitled to separate consideration of their prayer for declaratory judgment regardless of whether injunctive relief was available. They rely for this proposition on Zwickler v. Koota, supra. The district court distinguished the *Zwickler* case by limiting its rationale to attacks on statutes alleged to be unconstitutional on their face. The court also declined in its discretion to entertain the petition for declaratory judgment. We affirm the action of the district court on the discretionary basis, and thus find it unnecessary to reach the question whether the scope of *Zwickler* is so restricted. This conclusion is part and parcel of the injunctive relief question. Assuming *arguendo* that the court could not grant injunctive relief, it would be most unusual to render a declaratory judgment under the circumstances declaring the state court order unconstitutional. This would set up a direct confrontation with the state court with no power in the federal court to make its judgment effective. One can scarcely envision a more untoward predicament for a court, be it federal or state. On the other hand, if the court was possessed of power in the circumstances, it would follow that action on the declaratory judgment prayer would be a necessary concomitant.

■ Appellants also contend that they were entitled to injunctive relief in another form even if the order of the state court was immune from federal court reach. This, they urge, would be in the form of an injunction against criminal contempt trials in the event the state court order was violated. We reject this contention although criminal contempt proceedings may be separate proceedings. Such a fragmented approach would be exalting form over substance and would be an effort to do indirectly that which § 2283 prohibits a federal court from doing directly.

In sum, appellants must prevail, if they are to prevail, on the assignment of error that the district court erred in dismissing the complaint for failure to state a claim for injunctive relief.

## II.

We come then to the anti-injunction statute, 28 U.S.C.A. § 2283, supra. Our decision is in the context of First

---

2. The boycott itself was not enjoined. On July 20, 1968 the state court denied a request to modify the injunction except to the extent that the proscription against loitering and congregating was limited to the main business area. Paragraph 1 of the injunction was made more restrictive by deleting the language "in any organized form whatsoever." The court denied a request to permit picketing in front of public buildings near the business area for the purpose of publicizing grievances against the city and the county as opposed to grievances against the merchants.

Amendment rights only. Appellants are denied the right to picket in certain areas of the business district of Greenwood and before the courthouse and city hall. The denial is of all picketing, not merely a limit on the number of pickets. We reach only this aspect of the injunction, leaving to the district court on remand other questions such as vagueness and overbreadth in other parts of the injunction.

We begin by eliminating two questions. One is whether Title 42, § 1983,[3] constitutes an express exception to § 2283. The other is whether the rationale of Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, is applicable to carve out an exception to § 2283.

The *Dombrowski* decision sheds light on both questions. First, *Dombrowski*, although involving First Amendment rights, is distinguishable from the instant case in that here state proceedings had already been initiated at the time the appellants first came into the district court. In footnote 2 in *Dombrowski*, the Supreme Court made this distinction clear: "This statute [28 U.S.C.A. § 2283] and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted." Thus *Dombrowski* in and of itself is not controlling here. The federal action having been first in time, the court went on to state in the same footnote: "We therefore find it unnecessary to resolve the question whether suits under 42 U.S.C.A. § 1983 (1958 ed.) come under the 'expressly authorized' exception to § 2283." This latter question has subsequently been described by the court as being open. Cameron v. Johnson, 1965, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715, and Cameron v. Johnson, 1968, 390 U.S.

611, 88 S.Ct. 1335, 20 L.Ed.2d 182, footnote 3. In any event, we do not reach the § 1983 question since we find decision proper on a narrower approach.

Our decision is grounded on the premise that § 2283 is non-jurisdictional in that it is no more than a statutory enactment of the principle of comity for application in the relationship between federal and state courts. As such, it is to give way in those extraordinary cases where the federal injunction is necessary to vindicate clear First Amendment rights. The question, on this premise, becomes whether appellants alleged such a case.

The first facet of the premise, that § 2283 is demonstrative of a policy of comity in a system of federalism is sustained by the authorities. In Baines v. City of Danville, 4 Cir., 1964, 337 F.2d 579, 593, cert. den., 381 U.S. 939, 85 S. Ct. 1772, 14 L.Ed.2d 702, the court after an exhaustive analysis, said:

"Since the statute was fathered by the principles of comity, it has been held that the statute should be read in the light of those principles and, though absolute in its terms, is inapplicable in extraordinary cases in which an injunction against state court proceedings is the only means of avoiding grave and irreparable injury. In our view, the congressional command ought to be ignored only in the face of the most compelling reasons, but we have certainly been told by the Supreme Court that in those circumstances it may be disregarded, for its parentage discloses that it was not intended to be as absolute as it sounds.

The authorities simply equate § 2283 with the comity principle in a context of the equity powers of the court. See Smith v. Apple, 1924, 264 U.S. 274, 279,

---

3. 42 U.S.C.A. § 1983:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

44 S.Ct. 311, 68 L.Ed. 678, 681.[4] Cf. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, on the comity limitation under general equity powers. See also T. Smith & Son, Inc. v. Williams, 5 Cir., 1960, 275 F.2d 397; Dilworth v. Riner, 5 Cir., 1965, 343 F.2d 226. This approach was well-recognized by the district court in this case. Machesky v. Bizzell, 288 F.Supp. at 302.

This brings us to the question whether appellants alleged facts making out that extraordinary case which would warrant the court departing from the stricture of the congressional command of § 2283. This requires the application of the factual allegations here to the departure precedents.

One area in which the command of § 2283 has been held to give way is where the United States is a party. See Leiter Minerals, Inc. v. United States, 1957, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267. In that case the Supreme Court, in an opinion by Justice Frankfurter, reasoned that:

"The statute is designed to prevent conflict between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283, would be so great that we cannot

reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283, alone." 352 U.S. at 225, 77 S.Ct. at 291.

The emphasis is on the "national interest" or "superior federal interests" as asserted by the United States. In Studebaker Corp. v. Gittlin, 2 Cir., 1966, 360 F.2d 692, § 2283 was found not to be a bar even where the United States was not a party. Although the Securities and Exchange Commission could have there sought an injunction, it had not. The court in an opinion by Judge Friendly said:

"If the policy of the anti-injunction statute is superseded by the need for immediate and effective enforcement of federal securities regulations and statutes, the fact that enforcement here is by a private party rather than the agency should not be controlling." 360 F.2d at 698.

Here the United States could not have been a party and thus the *Studebaker* case is distinguishable in that regard. This line of cases does, however, point up the distinction between private parties asserting public rights and mere private parties—private rights status.

We should take note of what is meant here by public rights as distinguished from private rights. Public rights may be involved, as in *Leiter Minerals,* where the government's proprietary interests are the subject of litigation. They may arise, as in *Studebaker,* where the government is performing or might perform in its regulatory capacity. The most important public rights and the ones involved here, however, are political rights which determine the composition of gov-

---

4. § 2283 is the successor to § 5 of the Act of March 2, 1793, 1 Stat. at L. 335, Chap. 22, which provided that no writ of injunction might be granted on the part of Federal courts to stay proceedings in any state court. This section was later amended to make an exception for proceedings in bankruptcy. 36 Stat. at L. 1162, Chap. 231. The provision, as amended, was carried forward as §, 720 of the Revised Statutes (1874), § 265 of the Judicial Code (1911), and as 28

U.S.C.A. §, 379 (1940). Section 2283 resulted from the revision of the Judicial Code in 1948. 62 Stat. 968. As to the effect of the 1948 revision, see Wright, Federal Courts, §, 154 quoting Reviser's Note to § 2283: " * * * the revised section restores the basic law as generally understood and interpreted prior to the Toucey decision." [Toucey v. New York Life Ins. Co., 1941, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100]

ernment and the direction of government policy. In United States v. Carolene Products Co., 1938, 304 U.S. 144, 152, 58 S.Ct. 778, 82 L.Ed. 1234, 1241–1242, Justice Stone in another context differentiated between that governmental action affecting "ordinary commercial transactions" and that governmental action "which restricts those political processes which can ordinarily be expected to bring about repeal of undesirable legislation * * *." Listed by Justice Stone as included within public rights were voting, dissemination of information, political organization, and peaceable assembly. 304 U.S. at 152, footnote 4, 58 S.Ct. at 783, footnote 4. These public rights are what Justice Brennan and Professor Alexander Meiklejohn refer to as rights of "governing importance". See Brennan, "The Supreme Court and the Meiklejohn Interpretation of the First Amendment" 79 Harv.L.Rev. 1 at 12–13. This article points out that public rights relate to the citizen in his capacity as a governor, i.e., how the citizen votes, what information he has at his disposal relating to political decisions which he may be called upon to make, and how he may join with others to influence public policy.

■ Private rights, on the other hand, as we here use the term are those relating to the citizen in his capacity as one of the governed, i.e., his subjectivity to criminal laws and governmental regulation and his rights to governmental protection for his purely private affairs

such as contract and tort. Thus this decision does not reach the criminal defendant seeking to enjoin state criminal prosecutions not related to these public or governing rights secured by the First Amendment. Cf. Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L. Ed. 138, which forecloses the use of the federal injunctive powers in connection with private rights of this type.[5]

Numerous Supreme Court opinions attest to the fact that First Amendment rights are not private rights of the appellants so much as they are rights of the general public. "Those guarantees [of speech and press] are not for the benefit of the press so much as for the benefit of all of us. A broadly defined freedom of the press assures the maintenance of our political system and an open society." Time, Inc. v. Hill, 1967, 385 U.S. 374, 389, 87 S.Ct. 534, 543, 17 L.Ed.2d 456, 468. Bond v. Floyd, 1966, 385 U.S. 116, 136, 87 S.Ct. 339, 349, 17 L.Ed.2d 235, 248, speaks of the First Amendment as protecting "[t]he interest of the public in hearing all sides of a public issue." In New York Times Co. v. Sullivan, 1964, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686, 701, the court spoke of the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open * * *." In Stromberg v. California, 1931, 283 U.S. 359, 369, 51 S.Ct. 532, 536, 75 L.Ed. 1117, 1123, the court said:

"The maintenance of the opportunity for free political discussion to the

5. There the private right was an effort to prevent a state court from using the fruit of an unlawful search, and the court said:

"The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State Criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts

by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution." 342 U.S. at 123, 72 S.Ct. at 121.

end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system."

Indeed dictum in City of Greenwood, Miss. v. Peacock, 1966, 384 U.S. 808, 829, 86 S.Ct. 1800, 1813, 16 L.Ed.2d 944, 957, clearly speaks to this point:

"If the state prosecution or trial on the charge of obstructing a public street or on any other charge would itself clearly deny their rights protected by the First Amendment, they may under some circumstances obtain an injunction in the federal court. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22."

Since this passage speaks of "state prosecution or trial", it would seem clearly to indicate a situation somewhat different from Dombrowski in that in such a situation, as here, state proceedings within the meaning of § 2283 would be in progress. Thus, what the dictum must mean is that when the institutional interests sought to be protected by the Dombrowski decision are offended by the state proceeding, then the state proceeding may be enjoined even in the face of § 2283. What are these institutional interests? The language of Dombrowski is clearly directed to protecting the public interest in information about public issues. The court said:

"Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser." Dombrowski, supra, 380 U.S. at 486, 85 S.Ct. at 1121.

The Court also spoke of the interest in avoiding "making vindication of freedom of expression await the outcome of protracted litigation." Dombrowski, supra, 380 U.S. at 487, 85 S.Ct. at 1121.

Thus, what is here involved is not simply private litigation over private rights. It is not even, as in Leiter Minerals, public litigation in the narrow sense that the United States is a party protecting its proprietary interests. What is involved is much more public, and the demand for federal intervention is much more compelling. By way of emphasis, we reiterate the First Amendment facts. The injunctive prohibits "picketing * * * upon Howard Street or upon Carrollton Avenue or in the Highland Park Shopping Center or * * * within 300 feet of the place of business in the City of Greenwood of any of the Complainants in this cause." The complainants number approximately sixty of Greenwood's banks, food stores, drug stores, clothing stores, department stores, furniture stores, and numerous specialty stores and service centers. As recently as Amalgamated Food Employees v. Logan Valley Plaza, Inc., 1968, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603, the Supreme Court said, "We start from the premise that peaceful picketing carried on in a location open generally to the public is, absent other factors involving the purpose or manner of the picketing, protected by the First Amendment." 391 U.S. at 313, 88 S.Ct. at 1605.

The right to picket is not absolute. It must be "asserted within the limits of not unreasonably interfering with the rights of others to use the sidewalks and streets, to have access to store entrances, and where conducted in such manner as not to deprive the public of police and fire protection." Kelly v. Page, 5 Cir., 1964, 335 F.2d 114, 119. These interests can, of course, be protected by state injunctions narrowly drawn. The injunction here, however, has not struck such a balance. It prohibits all picketing in the designated business areas of Greenwood, for whatever purpose and in whatever manner carried out. This overshoots the mark and the situation cannot be saved by Milk Wagon Drivers Union v. Meadowmoor Dairies, 1941, 312 U.S. 287, 61 S.

Ct. 552, 85 L.Ed. 836, a case premised on violence of an intensity and duration in no way present here, or at least on the record before the district court.

The injunction here in question goes even further than prohibiting protected picketing. It enjoins "loitering or congregating * * * to induce, persuade, or coerce any person or persons not to trade or to do other business with * * * Complainants. * * *" This, for aught else appearing, prohibits the distribution of leaflets or even speech directed toward the boycott effort.

■ We hold that the state court injunction here is unconstitutionally overbroad in that it lumps the protected with the unprotected in such a way as to abridge important public interests in the full dissemination of public expression on public issues. We hold also that, where important public rights to full dissemination of expression on public issues are abridged by state court proceedings, the principles of comity embodied in § 2283 must yield, and that the district court is empowered to enjoin the state court proceedings to the extent that they violate these First Amendment rights.

■ In so holding we are not unaware that "[b]y that enactment, [§ 2283] Congress made clear beyond cavil that the prohibition is not to be whittled away by judicial improvisation." Amalagamated Clothing Workers of America v. Richman Brothers Co., 1955, 348 U.S. 511, 514, 75 S.Ct. 452, 454, 99 L.Ed. 600. It follows that a federal court must yield to the important institutional interests in comity where only private rights are involved. Where, however, the institutional interests in comity collides with the paramount institutional interests protected by the First Amendment, comity must yield. That is the case here based on the allegations and record, such as it was, before the district court.

■ This is not to say that the district court is to act as an appellate court or an overlord over the state court. It is to say that there is concurrent jurisdiction in the federal court [6] over the same subject matter and that the federal court must act where public rights springing from the First Amendment are violated even though that violation be at the hands of a state court. The action of the federal court must be limited to intruding only to the extent that the state court order impinges on the First Amendment rights involved. The state court, no less than a state or a municipality, is not immune from the Supremacy Clause of the Constitution. Art. VI, Cl. 2, Constitution. See Davis v. Francois, supra, for an approach to the overbreadth of the state court order. Cf. also Kelly v. Page, supra.

Reversed and remanded for further proceedings not inconsistent herewith.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is DENIED.

---

6. 28 U.S.C.A. § 1343:
   "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   *     *     *     *     *
   "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"