United States Court of Appeals,

Eleventh Circuit.

No. 95-2331.

Linda McKUSICK, Plaintiff-Appellant,

v.

CITY OF MELBOURNE, FLORIDA, Defendant-Appellee.

Sept. 27, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-1161-CIV-ORL-22), Anne C. Conway, Judge.

Before CARNES and BARKETT, Circuit Judges, and DYER, Senior Circuit Judge.

CARNES, Circuit Judge:

Linda McKusick brought this 42 U.S.C. § 1983 suit against the City of Melbourne, Florida, to challenge a permanent injunction entered by the Florida Circuit Court of Seminole County. The injunction prohibits named parties, and those acting "in concert" with named parties, from engaging in certain expressive activities within a 36-foot buffer zone around an abortion clinic. McKusick sought a declaratory judgment that certain parts of the injunction are unconstitutionally overbroad, and requested that the district court enjoin the City from enforcing the injunction against her and other parties not named in the injunction nor shown by probable cause to be acting in concert with named parties.

The district court denied McKusick's request for a preliminary injunction, relying on the principles of federalism and comity articulated in the Seventh Circuit case of *Hoover v. Wagner,* 47 F.3d 845 (7th Cir.1995). Thereafter, the district court dismissed McKusick's complaint, holding that it failed to state a claim under

§ 1983 because the City's actions in enforcing the injunction do not amount to a cognizable "policy" or "custom" subject to challenge under that provision. We hold that the district court erred by dismissing McKusick's complaint for failure to state a claim under § 1983. However, we also hold that the district court did not abuse its discretion in denying, on federalism and comity grounds, the preliminary injunction sought by McKusick; we affirm the district court's denial of that relief.

## I. BACKGROUND

On April 8, 1993, the Circuit Court of Seminole County entered the injunction in question. One of its provisions imposes a 36-foot buffer zone around a clinic operated by the Aware Woman Center for Choice, Inc. Named parties and those acting "in concert or participation with them, or on their behalf" are prohibited from "congregating, picketing, patrolling, demonstrating or entering that portion of public right-of-way or private property within thirty-six (36) feet of the property line of the Clinic." The injunction also contains an enforcement provision which provides, in part, that "[l]aw enforcement authorities ... are authorized to arrest those persons who appear to be in willful and intentional disobedience of this injunction."

This injunction has already been the subject of considerable litigation. *See Operation Rescue v. Women's Health Ctr.,* 626 So.2d 664 (Fla.1993), *aff'd in part, rev'd in part, sub nom. Madsen v. Women's Health Ctr.,* --- U.S. ----, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994); *Cheffer v. McGregor,* 6 F.3d 705 (11th Cir.1993), *vacated,* 41 F.3d 1421 (1994) (en banc) (subsequently remanded in view of

*Madsen* ).  The portions of the injunction that are relevant to this case are reproduced in *Madsen,* --- U.S. at ---- - ----, 114 S.Ct. at 2521-22 (does not include the enforcement provision) and *Cheffer,* 6 F.3d at 706-07 (includes the enforcement provision).

On September 24, 1994, McKusick entered the buffer zone, and began to read her Bible and pray.[1]  McKusick had not been a named party in the underlying state court lawsuit concerning the injunction, and she was "acting independently of any organization or individual named in the Injunction."  She was on public property and neither blocked access to the clinic nor spoke to anyone. Nevertheless, a law enforcement officer employed by the City approached McKusick and warned her that she was in violation of a court order by demonstrating in the buffer zone.  The officer requested that McKusick leave the buffer zone, and advised her that he would arrest her if she did not comply.  McKusick left the buffer zone because she did not want to be arrested.  She would like to return to the buffer zone to read her Bible and pray, but has not done so because she fears arrest.

After being threatened with arrest, McKusick brought this § 1983 civil action against the City seeking declaratory and injunctive relief.  She alleges that the City unconstitutionally "enforce[s] the Injunction against [McKusick] and other third parties who are neither named parties to the Injunction nor acting in concert with named parties."  McKusick further alleges that the

---

[1]Because this appeal arises following the grant of a motion to dismiss, we assume the truth of the facts alleged in McKusick's complaint from which this statement of facts is taken.

injunction, by its terms and as enforced by the City, impermissibly extends to any individual having notice of it. In summary, McKusick claims that the injunction, on its face and as enforced by the City, violates her rights, and the rights of other nonparties, under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

The United States Supreme Court has previously upheld this injunction, in substantial part, as a permissible content-neutral restriction on speech. *See Madsen,* --- U.S. at ----, 114 S.Ct. at 2530. Prior to the Supreme Court's decision in *Madsen,* a panel of this Court had held that the injunction was a viewpoint-based restriction on speech, *see Cheffer,* 6 F.3d at 710. The panel's decision was subsequently vacated by the en banc Court, and the case was remanded to the district court in view of the *Madsen* decision, *see Cheffer,* 41 F.3d at 1421-22. As a result of the Supreme Court's decision in *Madsen,* this Court is, of course, obligated to accept that the injunction is content-neutral.

In *Madsen,* the named parties to the injunction attempted to mount an overbreadth challenge to it by attacking the portion of the injunction that is directed at unnamed parties who might later be found to be acting "in concert" with the named parties. *See Madsen,* --- U.S. at ----, 114 S.Ct. at 2530. The Supreme Court held that the named parties lacked standing to bring an overbreadth challenge to the part of the injunction applying to nonparties. *Id.* However, because McKusick is a nonparty to the underlying litigation, she does have standing to raise the overbreadth question not reached in *Madsen.*

Nonetheless, the district court denied McKusick's motion for a preliminary injunction, and granted the City's motion to dismiss her complaint for failure to state a claim upon which relief could be granted.[2] This appeal followed, and it requires us to address four major issues. First, we consider whether we have subject matter jurisdiction to hear this case. Second, we consider whether the district court erred by dismissing McKusick's complaint for failure to state a claim. Third, we consider whether the injunction is facially overbroad. Finally, we consider whether the district court abused its discretion by relying on principles of federalism and comity to deny McKusick's application for a preliminary injunction.

## II. STANDARDS OF REVIEW

This Court reviews a district court's denial of preliminary injunctive relief for abuse of discretion, but reviews jurisdictional issues and other questions of law *de novo*. *See, e.g., Lucero v. Operation Rescue,* 954 F.2d 624, 627 (11th

---

[2]When it dismissed her complaint in March of 1995, the district court did so without prejudice, granting McKusick leave to file an amended complaint within twenty days of that order of dismissal. As she was entitled to do, McKusick elected to treat the order of dismissal as a final order by appealing it immediately to this Court, thereby waiving her right to amend the complaint. *See Schuurman v. Motor Vessel "Betty K V",* 798 F.2d 442, 445 (11th Cir.1986).

Fifteen months after McKusick filed her appeal, the district court entered yet another order, which purported to dismiss the entire case. However, that order is of no effect for purposes of this appeal, or otherwise, because McKusick's decision to treat the order of dismissal as a final appealable order, and to waive her right to amend her complaint, already had had the effect of terminating the case in the district court. *See Schuurman,* 798 F.2d at 445.

Cir.1992). *De novo* review applies to grants of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *E.g., Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993).

### III. SUBJECT MATTER JURISDICTION

The City contends that this Court lacks subject matter jurisdiction over this appeal because it does not present a justiciable case or controversy. The following statement is included in the City's brief:

> The City was not a party to [the] injunction that Ms. McKusick challenges in this appeal. The City has no interest in defending the Injunction. The City maintains that the only appropriate position for it to take is to maintain neutrality and to fulfill its duty to enforce the Injunction unless and until this Court or any other court instructs otherwise. Therefore, the City is not a proper party to defend the Injunction in an adversarial proceeding before this Court.

The City contends that its interests are not truly adverse to McKusick's and that this lawsuit therefore requests the Court to render an impermissible advisory opinion. The City relies on *United States National Bank v. Independent Insurance Agents,* 508 U.S. 439, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993), *Princeton University v. Schmid,* 455 U.S. 100, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982), and *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), in support of that contention. McKusick contends that the City's role as enforcer of the injunction renders it the only proper defendant in this lawsuit, because the City is the only party that can be enjoined from enforcing the injunction against McKusick and other similarly situated nonparties.

Federal courts lack the power to issue advisory opinions. The City's citations to *United States National Bank,* 508 U.S. at

445, 113 S.Ct. at 2178, and *Flast,* 392 U.S. at 100, 88 S.Ct. at 1952-53, support that basic proposition, as do countless other cases. However, the specific question that basic proposition brings into focus in this case is whether these parties before this Court are sufficiently opposed to prevent any decision that is rendered from being impermissibly "advisory." The City argues that the *Princeton* case answers that question.

In *Princeton,* the Supreme Court dismissed an appeal for want of jurisdiction because the State of New Jersey (the only party with standing) took no position whatsoever on the merits of the case. 455 U.S. at 102-03, 102 S.Ct. at 868-69. In contrast, the City in this case has taken, albeit reluctantly, a position on the merits. Indeed, the City's position on the merits, which is contrary to McKusick's position, is spelled out in detail in twenty-one pages of its brief to this Court. In view of that fact, we cannot accept the City's argument that it is "neutral," no matter how much it might wish to be. Moreover, the City—and only the City—is the entity enforcing the injunction in a manner McKusick finds objectionable.[3] Though the City might sincerely wish to be relieved of the burden of enforcing the injunction, it is the City that has been enforcing it and continues to do so; moreover, the City's brief defends the injunction against McKusick's attack. Therefore, this is not an "ill-defined,"

---

[3]The City did move to dismiss McKusick's lawsuit for failure to join the Aware Woman Center for Choice as a necessary party under Federal Rule of Civil Procedure 19(a). However, the district court never ruled on the motion, because it dismissed the case for failure to state a claim upon which relief can be granted. On appeal, the City does not press the merits of that motion, and we do not either.

"hypothetical or abstract," "friendly," "feigned," or "collusive" lawsuit of the variety condemned by *Flast,* 392 U.S. at 100, 88 S.Ct. at 1952-53 (citations omitted), and other cases. We do have jurisdiction to determine this appeal.

## IV. WHETHER McKUSICK STATED A COGNIZABLE § 1983 CLAIM

A private party may obtain relief against a municipality under § 1983 when the allegedly unconstitutional municipal action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or when the alleged constitutional violation results from municipal "custom." *Monell v. Department of Social Servs.,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). The presence of a municipal policy or custom is essential, because municipal liability under § 1983 can attach only when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question," *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985)).

The district court held that the City's enforcement of the injunction is not an actionable policy or custom under § 1983 and dismissed the complaint for failure to state a claim upon which relief can be granted. The district court reasoned that "[w]here a court enjoins local law enforcement to do something or refrain from doing something, compliance with the injunction is not a

matter of choice. The local authorities so act because the court orders it to be done."

McKusick argues that the district court erred in holding that her complaint failed to allege a cognizable policy or custom with respect to enforcement of the injunction. She contends that the injunction, by its terms, does not run against the City. Therefore, she reasons, the injunction does not "enjoin local law enforcement to do something or refrain from doing something," and the district court was mistaken in thinking otherwise. The pertinent part of the enforcement mechanism of the injunction reads as follows:

> Law enforcement authorities, pursuant to the protective provisions of the court's order, are authorized to arrest those persons who appear to be in willful and intentional disobedience of this injunction. Upon such arrest the person so arrested shall be admitted to bail upon the posting of a $500 cash or surety bond.... In the event of arrest and no bond being posted, the person arrested shall be promptly transferred to the Seminole County jail.... Such arrested person shall be brought before the undersigned judge no later than 8:30 a.m. of the day following his confinement in the Seminole County jail.

As McKusick correctly points out, the injunction authorizes, but does not command, local law enforcement to arrest those persons who appear to be in violation of the injunction.

Reasonably construed, McKusick's complaint alleges that the City has developed an administrative construction of the injunction that causes it to arrest all antiabortion protestors found within the 36-foot buffer zone, not just parties named in the injunction or who are shown by probable cause to be acting in concert with those named parties. The City has as much as admitted placing such a construction on the injunction. At the district court hearing on

the injunction, the City Attorney made the following statement about the City's enforcement procedure:

> We can only enforce the injunction by bringing before the court those persons who by their objective behavior, do certain things that we believe are violative of the injunction. The City of Melbourne cannot decide whether or not they intended to support them or whether or not they were members of Operation Rescue. These people do not wear badges saying, "I'm with Operation Rescue" when they're picketing and protesting out there.

Under the terms of the injunction itself, the City could elect not to arrest anyone at all. It could choose only to arrest those persons who, based upon prior experience, it knows to be acting in concert with named parties. It could, prior to making an arrest, question anyone found within the buffer zone or nearby in order to make a determination about whether the person is acting in concert with named parties to the injunction. McKusick's complaint alleges that the City has made a deliberate policy choice not to follow any of those alternatives. We agree with McKusick that the development and implementation of an administrative enforcement procedure, going beyond the terms of the injunction itself, leading to the arrest of all antiabortion protestors found within the buffer zone, including persons not named in the injunction nor shown by probable cause to be acting in concert with named parties, would amount to a cognizable policy choice.[4] Therefore, the district court erred

---

[4] We are not persuaded that the existence of the policy choice that McKusick alleges would be vitiated by the fact that, in an order denying a motion by the City to intervene and to clarify the injunction, the state court "directed" the City "to continue to enforce the injunction to the best of its ability in good faith and with good motive." In that order, the state court explained that "any effort to provide clarification as sought by the motion could be construed as a modification or as another substantive order subject to appeal, and hence would be inappropriate." In the course of denying the City's motion, the

in dismissing the complaint for failure to state a claim under §
1983. We turn now to McKusick's claim that the injunction is
facially overbroad, and thereafter to her claim that she is
entitled to a federal injunction to prohibit its enforcement
against her.

## V. FACIAL VALIDITY OF THE INJUNCTION

McKusick argues that the injunction is unconstitutionally
overbroad because: (1) the injunction attempts to bind the world
at large, impermissibly regulating the expressive activities of
persons over whom the court lacks jurisdiction; and (2) the
injunction authorizes the police to arrest persons based on less
than probable cause. The City argues that McKusick has misread the
injunction, and that the injunction does not attempt to bind the
world at large or authorize any arrest based on less than probable
cause. We address each of these issues in turn.

*A. Does the Injunction Purport to Bind the World at Large?*

McKusick argues that no court can issue an injunction that
binds the world at large, and that a speech-based injunction that
attempts to bind nonparties creates an unconstitutional restraint

---

state court specifically declined either to make the City a party
to the injunction or to narrow the range of enforcement
alternatives made available to the City by the terms of the
injunction itself. It would be anomalous if the very order
through which the state court declined to make the City a party
to the injunction and declined to modify the injunction in any
way were construed as a judicial adoption of the City's own
enforcement policy choice, regardless of whether that choice is
constitutional, supported by the terms of the injunction, or was
even before the state court. We decline to give the state
court's order such an anomalous construction.

on speech.  That may or may not be true.  [5]  However, it is irrelevant in this case, because the injunction at issue does not attempt to bind the world at large.  McKusick's argument that it does is based primarily on the following language:

> ORDERED AND ADJUDGED that any City of Melbourne police officer or other person authorized to serve process may serve a copy of this order on any individual who may not have otherwise received notice of the order.  Such officer may read the operative prohibitory language of this order to any individual who is without notice of this order, and such service or oral notice shall subject the person so served or noticed to the sanctions provided for herein for failure to comply herewith.

McKusick argues that "Judge McGregor's transcursion of judicial authority was at once complete when he extended the scope

---

[5]There is substantial case law to the effect that a court lacks equitable power to issue an injunction that binds the world at large.  *See, e.g., Regal Knitwear Co. v. National Labor Relations Bd.,* 324 U.S. 9, 13, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1944) ("The courts ... may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.");  *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 833 (2nd Cir.1930) (Hand, J.) ("[A court] cannot lawfully enjoin the world at large, no matter how broadly it words its decree."). It is not completely clear, however, whether this is a constitutional rule, or simply a basic equitable principle.  *See Chase Nat. Bank v. City of Norwalk, Ohio,* 291 U.S. 431, 437, 54 S.Ct. 475, 477, 78 L.Ed. 894 (1934) (stating that an injunction against independent nonparties "violates established principles of equity jurisdiction and procedure").

While separation of powers principles might well prevent a federal court from issuing an injunction against the world, it is a *state* court injunction that is at issue in this case.  Because the federal courts are not the guardians of the separation of powers within the states, *e.g., Sweezy v. State of New Hampshire,* 354 U.S. 234, 255, 77 S.Ct. 1203, 1214, 1 L.Ed.2d 1311 (1957), McKusick cannot properly rely on those principles in making her overbreadth argument.  There may be other constitutional principles, such as due process, that would prevent a state court from issuing an injunction that purported to bind nonparties who have no notice or opportunity to be heard prior to the issuance of the injunction.  This Court does not have to get to that, however, unless McKusick is reading the injunction correctly, which she is not.

of the injunction to "any individual.' "  The City responds that "McKusick errs in attempting to isolate the challenged provision from the rest of the injunction" because "fundamental rules of construction ... require that a legal instrument be examined in its entirety."  The City argues that, although the injunction authorizes police officers to read the injunction's prohibitory language to any individual, that prohibitory language, by its own terms, only applies to named parties and those acting in concert with them.

In our view, McKusick's interpretation of the injunction is foreclosed by the Supreme Court's interpretation of this same injunction in *Madsen.*  In that decision, the Supreme Court based its holding that the injunction is content-neutral on the fact that the injunction is targeted at a particular group—the named parties and those acting in concert with them—whose activities had become disruptive.  In explaining its holding on content-neutrality, the Supreme Court stated:

> We begin by addressing petitioners' contention that the state court's order, because it is an injunction that restricts only the speech of antiabortion protesters, is necessarily content or viewpoint based....  To accept petitioners' claim would be to classify virtually every injunction as content or viewpoint based. An injunction, by its very nature, applies only to a *particular group* (or individuals) and regulates the activities, and perhaps the speech, of *that group.*  It does so, however, because of *the group's* past actions in the context of a specific dispute between real parties....  [T]he court hearing the action is charged with fashioning a remedy for a specific deprivation, not with the drafting of a statute addressed to the general public.

*Madsen,* --- U.S. at ----, 114 S.Ct. at 2523 (emphasis added).  That explanation makes it clear that the Supreme Court did not give the injunction the interpretation that McKusick now urges.  If it had

done so, the Court could not have reached the conclusion that the injunction is content-neutral. Stated somewhat differently, if the Supreme Court had interpreted the injunction as an order against the world to refrain from speech activities expressing a particular viewpoint—specifically, an antiabortion viewpoint—within the 36-foot buffer zone, it almost certainly would not have concluded that the injunction is content-neutral.

That the majority in *Madsen* viewed the injunction as being targeted at a narrowly defined group of persons, instead of at the world at large, is underscored by the separate concurring opinions of Justices Souter and Stevens. Justice Souter emphasized that the trial judge who issued the injunction "made reasonably clear that the issue of who was acting "in concert' with the named defendants was a matter to be taken up in individual cases, and not to be decided on the basis of protesters' viewpoints." *Id.* at ----, 114 S.Ct. at 2530 (Souter, J., concurring). Similarly, Justice Stevens stressed:

> [While] legislation is imposed on an entire community, ... injunctions apply solely to an individual or a limited group of individuals.... Given this distinction, a statute prohibiting demonstrations within 36 feet of an abortion clinic would probably violate the First Amendment, but an injunction directed at a limited group of persons who have engaged in unlawful conduct in a similar zone might well be constitutional.

*Id.* at ----, 114 S.Ct. at 2531 (Stevens, J., concurring).

McKusick asks this Court to reinterpret the injunction, contrary to the way the Supreme Court has interpreted it, and then to declare the injunction, as reinterpreted, unconstitutional. Of course, we cannot do that. Because the injunction, as construed by the Supreme Court, does not bind the world at large, the injunction

cannot be unconstitutional on grounds that it does. Questions about the constitutionality of an injunction against the world at large are academic insofar as this injunction is concerned.

*B. Does the Injunction Authorize Arrest Without Probable Cause?*

McKusick argues that the injunction authorizes arrests without probable cause because it states that "[l]aw enforcement authorities, pursuant to the protective provisions of the court's order, are authorized to arrest those persons who appear to be in willful and intentional disobedience of the injunction." McKusick reasons that this language authorizes arrest on less than a reasonable ground to believe that a person is a named party or acting in concert with a named party. The City argues that McKusick has again misinterpreted the injunction because the "enforcement provision," like every other part of the injunction, is subject to the injunction's limiting language that applies its proscriptions only to named parties and those acting in concert with named parties.

As we have already held, the injunction applies only to named parties and those acting in concert with them. By its plain words, the injunction only authorizes arrest for those who appear to be in willful disobedience of it. It follows that the injunction only authorizes the arrest of named parties, or those acting in concert with them, who appear to be acting in willful disobedience of the injunction. McKusick seizes upon the word "appear" in the injunction's enforcement provision, and contends that "appear" is less than probable cause to believe. We do not know why it should be interpreted in such a fashion, even in the abstract. Moreover,

the word "appear" is but one word in the phrase "appear to be in willful and intentional disobedience of the injunction."  In context, the enforcement provision authorizes arrest of persons who, because of their own objective manifestations and because of other factors that may be relevant to a particular factual scenario, reasonably appear to be—*i.e.,* give the police probable cause to believe that they are—named parties to the injunction or acting in concert with named parties, and engaged in actions in violation of the injunction.  True enough, the injunction does not use the words "probable cause" or attempt to describe what factors will suffice for a showing of probable cause.  However, no principle of law requires that injunctions use magic words or provide hornbook expositions on probable cause.  Nor does any principle of law mandate that we interpret an injunction in a way that would undermine its validity.  McKusick's facial challenge to the injunction is without merit.  We turn now to her as-applied challenge, and to her claim that she is entitled to federal injunctive relief on that basis.

## VI. McKUSICK'S AS-APPLIED CHALLENGE AND THE PROPRIETY OF FEDERAL INJUNCTIVE RELIEF

Because the injunction neither purports to bind the world at large nor authorizes arrests without probable cause, McKusick's arguments that the injunction is unconstitutional on its face must fail.  However, because McKusick also makes an as-applied challenge to the injunction, the question remains as to whether she is entitled to federal court injunctive relief against application of the state court injunction to her.  The crux of McKusick's as-applied challenge is that, regardless of how the injunction

*should* be interpreted, the City has adopted an administrative construction of the injunction that applies it against the world and authorizes arrests without probable cause. She further alleges that she has been threatened with such an arrest.

McKusick is not a named party to the injunction and claims not to be acting in concert with any named party. Taking the allegations in her complaint as true, she did nothing but enter the 36-foot buffer zone to read her Bible and pray. Shortly after doing so, she was asked to leave the buffer zone on pain of arrest. So far as the complaint's averments go, the officer did nothing to determine whether McKusick was a named party or acting in concert with a named party; the officer simply stated to McKusick, "You are in violation of a court-ordered injunction signed by Judge Robert McGregor by demonstrating within the thirty-six foot buffer zone. Please return to the area outside the thirty-six foot zone." The officer then told McKusick he would arrest her if she did not leave the zone.

McKusick fears that, unless she obtains an injunction, she will be arrested and prosecuted if she attempts to read her Bible and pray within the buffer zone. This fear appears to have some foundation, as the City's self-described methodology for enforcing the injunction evidences, *see supra* Part IV. Moreover, the Appendix to Justice Scalia's dissenting opinion in *Madsen* indicates that others have been arrested who vigorously disclaim any association with the named parties. *See Madsen,* --- U.S. at ---- -----, 114 S.Ct. at 2550-52 (Scalia, J., dissenting). At oral argument in this Court, counsel for the City indicated that more

than 150 people have been arrested for violating the buffer zone. However, counsel further stated that none of those people were later found to be acting independently from the named parties to the injunction.

Taking as true the allegations in McKusick's complaint, the City of Melbourne police have arrested or threatened to arrest at least some antiabortion protestors who violate the buffer zone without making much, if any, inquiry into whether the protestors are named parties to the injunction, or acting in concert with named parties, other than examining the content of the protestors' speech. McKusick seeks an order from the federal district court telling the Melbourne police that they must not merely look to the content of a person's buffer zone speech when determining whether probable cause exists to support an arrest. She wants a federal court to instruct the City that its inquiry must, on pain of federal contempt, be more probing than that. In other words, McKusick wants a federal judge to order the City to do its job properly, and to refrain from over-enforcing the injunction against her or anyone else.

There are important principles that counsel against issuance of the sort of injunction McKusick seeks. Recently, these principles were ably discussed by the Seventh Circuit in *Hoover v. Wagner,* 47 F.3d 845 (7th Cir.1995), which involved facts remarkably similar to those in this case. In *Hoover,* antiabortion activists who were not named parties to a state court injunction brought a federal § 1983 action against a state court judge and a chief of police to challenge the injunction. Like McKusick, the *Hoover*

plaintiffs sought a declaration that the injunction was overbroad. Also like McKusick, the *Hoover* plaintiffs wanted to enjoin the police from over-enforcing the injunction. Relying on principles of federalism and comity, the Seventh Circuit held that the district court properly refused to issue an injunction and dismissed the case. Writing for the Court, Chief Judge Posner explained:

> Equitable remedies are powerful, and with power comes responsibility for its careful exercise. These remedies can affect nonparties to the litigation in which they are sought; and when, as in this case, they are sought to be applied to officials of one sovereign by the courts of another, they can impair comity, the mutual respect of sovereigns—a legitimate interest even of such constrained sovereigns as the states and the federal government.... [T]here is not an absolute right to an injunction in a case in which it would impair or affront the sovereign powers or dignity of a state or a foreign nation.
>
> ... The relief that the plaintiffs seek is at once an insult to the judicial and law enforcement officials of Wisconsin ... and an empty but potentially mischievous command to these officials to avoid committing any errors in the enforcement of the injunction—and if a plaintiff were erroneously convicted for violating the state court injunction, would that put the prosecutor, the judge, and, if there were a jury, the jury in contempt of the federal injunction?

*Hoover,* 47 F.3d at 850-51 (citations omitted).

Like the remedy sought by the *Hoover* plaintiffs, the remedy McKusick seeks here is "potentially mischievous." It is difficult to imagine how the injunction McKusick seeks might usefully be framed. A general injunction against the City to refrain from arresting without probable cause would add nothing to what the law already commands, unless the district court improperly indulged in an advisory opinion instructing the City about what can and cannot constitute a showing of probable cause in such a circumstance.

Even if the district court were able to frame the injunction McKusick seeks in a meaningful way, it would be ill-advised to do so, because the federal injunction would pave the way for virtually every individual held in contempt of the state court injunction to argue, on a case-by-case basis in federal court, that the City had violated the federal injunction by failing to make a sufficient probable cause determination prior to arrest, or had simply reached the wrong conclusion about it. This arrangement would thrust the federal court into an unseemly, repetitive, quasi-systematic, supervisory role over administration of the state court injunction, and it "would disrupt the normal course of proceedings in the state courts via resort to the federal court for determination of the claim *ab initio,*" *O'Shea v. Littleton,* 414 U.S. 488, 501, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974). A federal court injunction in this case would be of the "intrusive and unworkable" variety condemned by the Supreme Court in *O'Shea,* 414 U.S. at 500, 94 S.Ct. at 678. In such a circumstance, principles of federalism and comity dictate that the federal court stay its hand. *See Growe v. Emison,* 507 U.S. 25, 32, 113 S.Ct. 1075, 1080, 122 L.Ed.2d 388 (1993) (noting that, in some circumstances, principles of federalism and comity dictate abstention). Under these circumstances, the district court certainly did not abuse its discretion by declining to arrogate to itself the role of overseer of the enforcement of a state court injunction.

Although principles of federalism and comity counsel otherwise, McKusick contends that she was nonetheless entitled to an injunction. She points to *Machesky v. Bizzell,* 414 F.2d 283

(5th Cir.1969), in support of that contention.  In *Machesky,*
persons who desired to picket in certain public areas of Greenwood,
Mississippi brought an action in federal court to challenge a state
court injunction that prohibited all such picketing.   The
plaintiffs sought declaratory and injunctive relief against
enforcement of the state court injunction.   *Id.* at 284.   The
district court denied relief and dismissed the complaint, holding
that the action was barred by the Anti-Injunction Act, 28 U.S.C. §
2283.  *Id.*  On appeal, this Court reversed.  We held that although
the Anti-Injunction Act is grounded in principles of comity,
"[w]here ... the institutional interests in comity collide[ ] with
the paramount institutional interests protected by the First
Amendment, comity must yield."  *Id.* at 291.   Because the state
court injunction at issue was facially overbroad, we remanded for
the district court to consider granting injunctive relief.  *Id.*

Assuming for present purposes that it has survived *O'Shea,*
the *Machesky* decision is distinguishable from this case.   The
propriety of federal equitable relief in *Machesky* was premised on
the presence of a facially overbroad injunction.   As we explained
in that case:

> The right to [demonstrate] is not absolute.  It must be
> asserted within the limits of not unreasonably interfering
> with the rights of others to use the sidewalks and streets, to
> have access to store entrances, and where conducted in such
> manner as not to deprive the public of police and fire
> protection.  These interests can, of course, be protected by
> state injunctions narrowly drawn.   The injunction here,
> however, has not struck such a balance.   It prohibits all
> picketing in the designated business areas of Greenwood, for
> whatever purpose and in whatever manner carried out.   This
> overshoots the mark....
>
> ....

We hold that the state court injunction here is unconstitutionally overbroad in that it lumps the protected with the unprotected in such a way as to abridge important public interests in the full dissemination of public expression on public issues.

*Id.* at 290-91 (citations and internal quotation marks omitted). Here, as we have explained in Part V of this opinion, we are not faced with a facially overbroad injunction. Instead, we are faced with a facially valid injunction and a plaintiff who seeks a federal court order prohibiting its over-enforcement.[6] In such a circumstance, private interests in obtaining a preemptive strike against overenthusiastic enforcement of a facially valid injunctive order must yield to the institutional interests of federalism and comity. We note that if McKusick should ever be wrongfully arrested or punished for the exercise of her First Amendment rights, she will have remedies through which to vindicate those rights. For example, any future claims for damages that McKusick might bring for an arrest without probable cause would not be subject to dismissal under the abstention principles governing her present claim for equitable relief. *See, e.g., Quackenbush v.*

---

[6]Judge Barkett's concurring opinion proposes that we dismiss McKusick's case "without reaching an analysis of the facial validity of the injunction." However, our *Machesky* precedent forecloses her proposal. *Machesky* holds that where an injunction is attacked on First Amendment grounds and is facially overbroad, abstention for comity and federalism reasons is inappropriate. Otherwise, the result in *Machesky* would have been different. *See* 414 F.2d at 290-91. Moreover, *Machesky's* holding is consistent with the abstention principles announced by the Supreme Court. See *City of Houston, Tex. v. Hill,* 482 U.S. 451, 467, 107 S.Ct. 2502, 2513, 96 L.Ed.2d 398 (1987) ("We have held that "abstention ... is inappropriate for cases [where] ... statutes are justifiably attacked on their face as abridging free expression.' ")) (quoting *Dombrowski v. Pfister,* 380 U.S. 479, 489-90, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965)) (alterations in *City of Houston* ).

*Allstate Ins. Co.,* --- U.S. ----, ---- - ----, 116 S.Ct. 1712, 1720-23, 135 L.Ed.2d 1 (1996).

### VII. CONCLUSION

For the foregoing reasons, we VACATE the portion of the district court's order that dismissed McKusick's complaint for failure to state a claim upon which relief can be granted. We AFFIRM the denial of preliminary injunctive relief, and we REMAND the case for further proceedings consistent with this opinion.[7]

BARKETT, Circuit Judge, specially concurring:

---

[7]Although the district court did not rely upon them in dismissing McKusick's case, and instead dismissed the case for failure to state a claim under § 1983, we note that the same principles of federalism and comity that govern our analysis of McKusick's claim for preliminary injunctive relief apply with equal force to her claim for permanent injunctive relief, and to her claim for declaratory relief. *See Hoover v. Wagner,* 47 F.3d 845, 849-52 (7th Cir.1995); *see also Green v. Mansour,* 474 U.S. 64, 72, 106 S.Ct. 423, 427-28, 88 L.Ed.2d 371 (1985) (discussing the discretionary nature of declaratory relief). Therefore, just as the district court did not abuse its discretion in denying McKusick preliminary injunctive relief, it necessarily follows that it would not be an abuse of discretion for the district court to deny McKusick permanent injunctive relief or declaratory relief on those grounds as well.

In her concurring opinion, Judge Barkett invites us to take the foregoing analysis one step further and hold that McKusick's entire case is due to be dismissed on equitable grounds. Her approach would require us to hold not only that the district court did *not* abuse its discretion in denying McKusick preliminary injunctive relief, but also that the district court *would* abuse its discretion if it granted any sort of equitable relief in this case. That may well be so. However, we are convinced that the more appropriate course is for us to allow the district court the opportunity to address that matter in the first instance. *See Macklin v. Singletary,* 24 F.3d 1307, 1311 (11th Cir.1994) ("Because our scope of review is narrower and a district court's range of choice broader under the abuse of discretion standard, we should be more reluctant to address in the first instance issues to which that standard of review applies."), *cert. denied,* --- U.S. ----, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995).

Rather than reversing and remanding for the trial court to do so, I would dismiss the declaratory claim on the same equitable grounds that the majority employs to dismiss the claim for injunctive relief without reaching an analysis of the facial validity of the injunction or the appropriateness of resolving that issue with only the parties involved here. The declaration McKusick seeks is a declaration that the City of Melbourne cannot engage in certain conduct, and such a declaration is the equivalent of an injunction. *Samuels v. Mackell,* 401 U.S. 66, 72-73, 91 S.Ct. 764, 767-68, 27 L.Ed.2d 688 (1971); *Hoover v. Wagner,* 47 F.3d 845, 849 (7th Cir.1995). Therefore, for the same equitable reasons we dismiss McKusick's claim for injunctive relief, we should dismiss her claim for declaratory relief. I recognize that the majority remands the declaratory claim back to the district court anticipating that the district court will dismiss the remaining claim. This course, however, seems unnecessary. We routinely uphold a district court's dismissal of a case when an alternate grounds for dismissal exists. *See, e.g., Rozar v. Mullis,* 85 F.3d 556, 558 (11th Cir.1996); *Hester v. International Union of Operating Engineers, et. al.,* 830 F.2d 172 (11th Cir.1987); *see also Hoover,* 47 F.3d 845 (7th Cir.1994). I would do so in this instance.