**A & M ENTERPRISES, LLC,
et al., Plaintiffs,**

v.

**Randall V. HOUSTON,
et al., Defendants.**

No. CIV. A. 01–D–914–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 31, 2001.

John S. Andrews, District Attorney's Office, Second Judicial District of Alabama, Greenville, AL, pro se.

William G. Hughes, L. Dan Turberville, Mobile, AL, for plaintiffs.

LaVette R. Lyas–Brown, Office of the Attorney General, Alabama State House, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is the Motion to Dismiss ("Motion") filed by Defendants on August 14, 2001. Plaintiffs filed a Response ("Resp.") on September 10, and Defendants filed a Reply on September 24. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion is due to be granted.

## FACTS

Plaintiffs own businesses in Autauga and Butler counties that profit in whole or in part from the use of coin-operated video machines where players receive rewards of merchandise as prizes. Defendant Randall Houston ("Houston") is the district attorney of Elmore, Autauga, and Chilton counties, and Defendant John Andrews ("Andrews") is the district attorney of Butler County. (Compl.¶¶ 1–2.) The present action centers around the legality of Plaintiffs' businesses under Alabama law, and the propriety under the United States

Constitution of the steps taken by Defendants to enforce the Alabama laws.

Earlier this year, the members of the Alabama House of Representatives requested an advisory opinion from the Justices of the Supreme Court of Alabama concerning whether Senate Bill No. 257 ("SB 257"), which was pending before the legislature, was a revenue-raising measure that should originate in the House of Representatives, pursuant to § 70 of Alabama Constitution of Alabama of 1901. *See Opinion of the Justices,* 795 So.2d 630 (Ala.2001). The House provided the following synopsis of SB 257 to the Justices:

> This bill would provide that bona fide coin-operated amusement machines shall not be subject to the criminal prohibition against possessing gambling devices; would amend the exemption of racing facilities from existing gambling laws in order to accommodate other licensed wagering activities at such facilities; would authorize each racing commission in the state to license each racing facility under its jurisdiction to conduct skill dependent wagering games and prescribe the terms and conditions of such license; would confer upon each racing commission, in addition to the powers that it has to license and regulate racing and pari-mutuel wagering thereon, the same or similar powers to license and regulate the conduct of skill dependent wagering games; would exempt skill dependent wagering games from the prohibitions of certain criminal and civil statutes and provide that certain acts related to skill dependent wagering games shall constitute crimes; and would levy certain state and local license taxes on the conduct of skill.

*Id.* at 631.

In response to this request, four Justices issued an advisory opinion declaring that the proposed legislation contravened § 65 of the Constitution of Alabama of 1901, which prohibits a lottery or "any scheme in the nature of a lottery," and was, therefore, unconstitutional. *Id.* Indeed, the advisory opinion went so far as to suggest that any such video game in which "chance is the dominant factor" and "where the machine is programmed to win" violates the Alabama Constitution.

Relying upon this advisory opinion, Defendants issued letters to Plaintiffs, in Defendants' respective counties, informing Plaintiffs that they were in violation of the law, and directing them to remove all video gaming devices from their places of business. Houston indicated that any "[i]llegal gaming devices remaining in Autauga County, Alabama after August 10, 2001, will be seized, condemned, and destroyed." Andrews indicated that, if the machines were not removed from Plaintiffs' places of business by August 3, "appropriate measures" would be taken to enforce the law. (Pls.' Ex. 1–2.) Plaintiffs claim that their machines are not illegal because the machines constitute "coin-operated games for bona fide amusement purposes," which are lawful in Alabama pursuant to § 13A–12–76 of the Code of Alabama.[1]

---

1. Section 13A–12–76 of the Code of Alabama provides, in relevant part, as follows:

    (a) Sections 13A–12–70 to 13A–12–75, inclusive, shall not apply to a coin-operated game or device designed and manufactured for bona fide amusement purposes which, by application of some skill, only entitles the player to replay the game or device at no additional cost if a single play of the bona fide coin-operated amusement machine or device can reach no more than 25 free replays or can be discharged of accumulated free replay, or rewards the player exclusively with merchandise limited to noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than five dollars ($5). . . .

Although the Supreme Court of Alabama has never addressed whether § 13A–12–76 protects video poker machines, lower courts have split on the issue of their legality.[2] The advisory opinion sparked a controversy as to the legality of video gaming devices. Indeed, the constitutionality of § 13A–12–76 is currently being litigated in the Circuit Court of Montgomery County. *See Pryor v. Westfaul,* CV–01–1678 (Montgomery Cty. Cir. Ct., filed June 7, 2001). In that case, the State is asking the circuit court to declare unconstitutional on its face or as applied to "bona fide coin-operated amusement machines" on the ground that such games are lotteries or schemes in the nature of a lottery, in violation of the Constitution of Alabama.

On July 25, 2001, Plaintiffs filed this action, asserting violations of their federal constitutional rights, as enforced by 42 U.S.C. § 1983. In their Complaint, Plaintiffs contend that Defendants acted "without affording [them] any reasonable notice or opportunity to be heard, or any procedural or substantive due process of law," and deprived them of equal protection of the law, in violation of the Fourth, Fifth and Fourteenth amendments.

(Compl. ¶¶ 9, 11.) Plaintiffs ask that the court enter an order enjoining Defendants from any acts

> that deprive[ ] Plaintiffs of their constitutional rights, including, but not limited to closing the Plaintiffs' business operations, threatening to arrest the Plaintiffs or Plaintiffs' employees for not closing the businesses or removing the Plaintiffs' machines from the places of business, confiscating or attempting to confiscate or destroy amusement machines and currency belonging to the Plaintiffs.

(Compl. ¶ 13.) In short, Plaintiffs request that the court preserve the status quo until the courts of Alabama have definitively determined the constitutionality of § 13A–12–76 in *Pryor v. Westfaul.* They have already been denied their request for a temporary restraining order in this regard, *A & M Enterprises v. Houston,* No. 01–D–914–N, 2001 WL 957956, 2001 U.S. Dist. LEXIS 12880 (M.D.Ala., July 30, 2001), and they have conceded that their only remaining claim is for injunctive relief. (Resp. ¶ 4.)

## MOTION TO DISMISS STANDARD

A defendant may move to dismiss a complaint if the plaintiff has failed to state

(e)(1) For purposes of this section, "bona fide coin-operated amusement machine" means every machine of any kind or character used by the public to provide amusement or entertainment whose operation requires the payment of or the insertion of a coin, bill, other money, token, ticket, or similar object, and the result of whose operation depends in whole or in part upon the skill of the player, whether or not it affords an award to a successful player, and which can be legally shipped interstate according to federal law. Examples of bona fide coin-operated amusement machines include, but are not limited to, the following:

c. Video games.

h. Novelty arcade games.

(2) The term "bona fide coin-operated amusement machine" does not include the following:

k. Slot machines.
l. Video poker games....

ALA. CODE § 13A–12–76 (1996).

2. *Compare State v. $1,895.00 U.S. Currency,* No. 99–7032 (Jefferson Cty. Cir. Ct. July 6, 2001) (finding thirty video gaming machines in violation of Alabama law), *with State v. Ray & Ann's Place,* 765 So.2d 19 (Ala.Civ.App. 2000) (upholding lower court's finding that certain video machines did not offend Alabama law).

a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Because a 12(b)(6) motion attacks the sufficiency of the complaint, the court assumes that all factual assertions set forth therein are true, and construes all factual allegations in the light most favorable to the plaintiffs. *A.N.R. v. Caldwell,* 111 F.Supp.2d 1294, 1295 (M.D.Ala.2000). As a general rule, a complaint should not be dismissed under 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen,* 76 F.3d 347, 349 (11th Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## DISCUSSION

Before addressing the viability of the present causes of action asserted by Plaintiffs, the court must determine whether it has jurisdiction over the subject matter of the present action. Certainly Plaintiffs satisfy the "well-pleaded complaint" rule by alleging a deprivation of constitutional rights under 42 U.S.C. § 1983. Though this rule is a prerequisite to a finding of federal jurisdiction, alone it is not sufficient. Rather, "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir.1997). Unless Plaintiffs have suffered an injury or, at a minimum, have "come into immediate danger of suffering an injury," the ripeness doctrine precludes the court from addressing their claims. *Kirby v. Siegelman,* 195 F.3d 1285, 1289 (11th Cir.1999).

"Federal courts lack the power to issue advisory opinions." *McKusick v. City of Melbourne,* 96 F.3d 478, 482 (11th Cir. 1996). As such, the purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In this light, it is worth noting that courts have recognized an additional basis for the ripeness doctrine, namely prudential considerations. *Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir.1995) (holding that, in addition to constitutional requirement of sufficient injury, ripeness analysis should consider "whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court") (citing *Johnson v. Sikes,* 730 F.2d 644, 648 (11th Cir.1984)). In other words, even if the court may constitutionally exercise jurisdiction, it may refuse to do so, particularly in cases where injunctive relief is sought. *McCarthy v. Briscoe,* 553 F.2d 1005, 1007 (5th Cir.1977) ("Injunctive remedy is discretionary and it is properly withheld when the controversy is not ripe for judicial resolution.").[3]

Ripeness is essentially a "question of timing." *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). The Eleventh Circuit has held that two factors are to be considered in determining whether a plaintiff's grievances are so ripe as to constitute a justiciable "case or controversy." The first is "the fitness of the issues for judicial decision." *Digital Properties,* 121 F.3d at 589. Courts should be cautious when a case is anchored in future events that may not occur as anticipated, if at all; courts

---

**3.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

simply "may not pass on hypothetical matters." *Kirby*, 195 F.3d at 1290. The second factor is "the hardship to the parties of withholding court consideration." *Digital Properties*, 121 F.3d at 589. In short, the possibility that a court might venture into the realm of speculation should not categorically curtail review when such a curtailment would entail significant detriment to a party. *But cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 300, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) ("Even though a challenged statute is sure to work the injury alleged, however, adjudication might be postponed until a better factual record might be available.") (internal quotations omitted).

Plaintiffs argue that they readily satisfy both factors. Defendants have made specific threats of immediate criminal prosecution, and such prosecution will substantially, if not permanently, harm their economic interests. "While pre-enforcement review is the exception rather than the rule," *Kirby*, 195 F.3d at 1290, it would be a stringent interpretation of the ripeness doctrine to require that a party "risk probable criminal sanctions in order to bring a justiciable pre-enforcement challenge." *Cheffer*, 55 F.3d at 1524. Indeed, it is difficult to imagine a better example of "substantial hardship" than when the court's refusal to intervene "may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

The fatal flaw in Plaintiffs' argument is the absence of any "constitutionally protected activity" so as to rightfully invoke the authority of this tribunal.[4] *Steffel* and the line of cases relying thereupon concern instances either where (1) the plaintiff's activity is arguably protected under the Constitution or (2) the statute in question arguably violates the Constitution. *See generally* 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3532.5. The thrust of Plaintiffs' argument is that, absent a definitive finding by the courts of Alabama as to the criminality of video gaming machines, the United States Constitution forbids the initiation of any criminal proceedings. This is simply not true.

Certainly should Defendants successfully follow through with their threats, the consequence will be substantial economic harm to Plaintiffs, but so long as the procedures implemented therein do not offend the United States Constitution, they are no concern of the federal judiciary. It may well be that Plaintiffs' activities do not violate the Alabama Constitution, but this is a question for the courts of Alabama. Plaintiffs have provided the court with no evidence to suggest that Alabama's procedures are inadequate in arriving at this determination. Absent such support, their "allegations amount to mere speculation about contingent future events." *Cheffer*, 55 F.3d at 1524. Without more, the court cannot conclude that the issues are fit for adjudication.

■ In response to the Fourth Amendment allegations, Defendants have argued that, prior to seizing any video machines they will obtain search warrants. The court has no reason to believe that the

4. The court erroneously relied upon *Steffel* as a basis for jurisdiction in an earlier Order denying Plaintiffs' request for a temporary restraining order. *A & M Enterprises*, 2001 WL 957956, at *3, 2001 U.S. Dist. LEXIS 12880, at *9. While the court reached the proper outcome in that Order, it is worth noting that dismissal would have been proper in that instance. The same mistake will not be made twice.

magistrate will grant such warrants without probable cause. *Cf. Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 504 n. 22, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ("In a pre-enforcement challenge it is difficult to determine whether Fourth Amendment rights are seriously threatened."). Any injunction issued by the court in this regard would merely remind Defendants "to refrain from arresting without probable cause," verging on an advisory opinion instructing them "what can and cannot constitute probable cause." *McKusick,* 96 F.3d at 488. Absent some threat of constitutional injury which is "both real and immediate, not conjectural or hypothetical," Plaintiffs simply have not asserted a "case or controversy" for purposes of Article III. *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal quotations omitted).

■ Plaintiffs' equal protection claims fare no better. Plaintiffs assert a dubious claim of discriminatory enforcement such that in the state of Alabama, some prosecutors are awaiting the resolution of the *Pryor v. Westfaul* case before prosecuting video gambling operators. Presumably the effect of the injunction entered by the court in this regard would be to require uniformity in the prosecutorial discretion of state agents. The court need not address the grave federalism issues posed by such a request, for the Eleventh Circuit has held that circumstances such as these are not ripe for adjudication. *Florida Businessmen for Free Enterprise v. Hollywood,* 673 F.2d 1213, 1220 (11th Cir.1982) ("Regardless of the risk of discriminatory enforcement, the Merchants may raise this claim only in post-enforcement proceeding when the possibility of selective enforcement has 'ripen[ed] into a prosecution.'") (quoting *Hoffman Estates,* 455 U.S. at 503 n. 21, 102 S.Ct. 1186). Absent a more concrete factual scenario from which to determine the rationality of the basis underlying the different modes of *potential* prosecutions, the court cannot address Plaintiffs' equal protection claims. *See Valley Forge Christian College v. Ams. United for Separ. of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (questions presented before courts must be resolved, "not in the rarefied atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action").

■ Finally, the due process claims asserted under the Fourteenth Amendment are likewise due to be dismissed under the ripeness doctrine. Defendants have made clear that they intend to invoke the civil forfeiture procedures available to them under Alabama state law. *See* Ala.Code § 13A–12–30 (1975). Proceedings would then take place in state court wherein Plaintiffs could present the arguments they wish for the court to hear presently. As with the Fourth Amendment claim, the court finds that this is not the occasion to evaluate the adequacy of the such procedures. *See Hemperly v. Crumpton,* 708 F.Supp. 1247, 1250–51 (M.D.Ala.1988) ("While it is undisputed that plaintiffs have a federal constitutionally protected right to own the property in question, defendants have not yet done anything to deprive them of this right."); *cf. Novel Mgmt. v. Woodward,* No. 01–BU–1699–S, 2001 U.S. Dist. LEXIS 13210 at *14 (N.D.Ala. July 13, 2001) ("[T]he Constitution simply does not require this type of hearing to occur prior to the seizure of the property where it is determined that there is probable cause to believe that such is contraband under state law.").

In short, the present matter does not belong in federal court. Any alleged constitutional problems that might be forth-

coming are far too speculative to satisfy the requirements of the ripeness doctrine. The court can sympathize with Plaintiffs' concerns that it might be more convenient in the long run should Defendants await the definitive outcome of the *Pryor v. Westfaul* matter, but this prospective inconvenience in no way constitutes a "case or controversy" under Article III.[5] As such, the court finds that it lacks jurisdiction to hear the present matter.

## ORDER

Accordingly, it is CONSIDERED and ORDERED that Defendants' Motion to Dismiss be and the same is hereby GRANTED and that this action be and the same is hereby DISMISSED WITH PREJUDICE.

---

5. Moreover, even if the court could exercise jurisdiction, serious federalism questions would counsel in favor of restraint. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The matter before the court is solely one of the interplay between Alabama's criminal code and its state constitution. A federal court's attempt to dictate the appropriate guidelines under which the Alabama system of criminal justice operates on a day-to-day basis must bend to overriding principles of comity in all but the most constitutionally offensive matters. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (holding that even were justiciability requirements satisfied, district court should still require strict proof of police misbehavior before issuing injunction mandating police departmental guidelines).